ORIGINAL

1  Lee A. Sherman, Esq. (SBN 172198)
   Robert W. Thompson (SBN 106411)
2  Douglas A. Wright, Esq. (SBN 239112)
   **CALLAHAN, McCUNE & WILLIS, APLC**
3  111 Fashion Lane
   Tustin, California 92780-3397
4  Tel.:(714) 730-5700
   Fax:(714) 730-1642
5  E-mail:    Lee_Sherman@cmwlaw.net
              Robert_Thompson@cmwlaw.net
6              Douglas_Wright@cmwlaw.net

7  [Additional Counsel listed on signature page]

8  Attorneys for Plaintiffs
   JOSE L. ACOSTA, JR., ROBERT RANDALL, and BERTRAM ROBISON
9  individually, and on behalf of all other similarly situated

10

11                **UNITED STATES DISTRICT COURT**

12                **CENTRAL DISTRICT OF CALIFORNIA**

13                    **SOUTHERN DIVISION**

14  JOSE L. ACOSTA, JR., ROBERT      )  Case No.: CV 06-5060 DOC (MLGx)
    RANDALL, and BERTRAM             )
15  ROBISON, individually, and on behalf )  **NOTICE OF MOTION AND**
    of all other similarly situated,   )  **MOTION TO DISQUALIFY**
16                                     )  **COUNSEL FOR PLAINTIFFS IN**
                 Plaintiffs,           )  **THE RELATED *WHITE* AND**
17                                     )  ***HERNANDEZ* MATTERS;**
         v.                            )  **MEMORANDUM OF LAW IN**
18                                     )  **SUPORT THEREOF;**
    TRANS UNION, LLC, and DOES 1 to    )  **DECLARATIONS OF LEE A.**
19  10, Inclusive                      )  **SHERMAN, PETER RECCHIA**
                                       )
20              Defendants.            )  Date:  November 20, 2006
    _____  )  Time: 8:30 a.m.
21                                     )  Place: Courtroom 9D
    AND ALL RELATED CASES              )  Judge: Hon. David O. Carter
22                                     )
                                       )
23  _____  )

24

25  DOCKETED ON CM

26  OCT 3 1 2006

27  BY _____ 074

28
                            - 1 -

TO ALL PARTIES AND TO THEIR RESPECTIVE ATTORNEYS HEREIN:

PLEASE TAKE NOTICE that on November 20, 2006 at 8:30 a.m. in Courtroom 9D of the above entitled United States District Court located at 411 West Fourth Street, Santa Ana, California, Plaintiffs JOSE L. ACOSTA, ROBERT RANDALL, and BERTRAM ROBISON will and hereby do move for an order disqualifying the law firms of Lieff, Cabraser Heimann & Bernstein, LLP, Caddell & Chapman, and all other associated counsel including Daniel Wolf, Charles Juntikka, Stuart Rossman, Charles Delbaum, Leonard Bennett, Matthew Erausan and Mitchell Toups (hereinafter jointly referred to as the "Sobol/Caddell Group") from serving as counsel on behalf of any party with regard to the approval process for the proposed settlement of this and all related matters.[1]

This motion is brought on the grounds that the Sobol/Caddell Group engaged in improper and unauthorized ex parte communications with individuals already engaged as expert witnesses by Plaintiffs in the above entitled matter as well as the matter entitled Pike v. Equifax Information Services, LLC (Case No. CV 05-1172 DOC (MLGx)). Further, the Sobol/Caddell Group continued the unauthorized ex parte communications after learning that these experts had already become involved with the Plaintiffs in the *Pike* and *Acosta* matters, which ultimately resulted in these experts withdrawing their services from Plaintiffs in the *Pike* and *Acosta* matters. As has been demonstrated in the recent motions to consolidate and motions for appointment of interim lead counsel filed by the Sobol/Caddell Group, they will stop at nothing to impede the ability of Plaintiffs in *Pike* and *Acosta* to bring their settlement to the court for approval. The unauthorized poisoning of Pike and Acosta's experts is just another example.

---

[1] Plaintiffs in the related Pike v. Equifax Information Services, LLC (Case No. CV 05-1172 DOC (MLGx) join in the instant motion. See concurrently filed notice of

1       This motion is made pursuant to Federal Rules of Civil Procedure, Rule

2   26(b)(4) and pursuant to the inherent powers of the court to manage their own

3   proceedings and the control the conduct of those who appear before them, as

4   discussed in *Chambers v. Nasco, Inc.*, 501 U.S. 32, 43, 115 L. Ed. 2d 27 and

5   *Erickson v. Newmar Corp.* 87 F.3d 298 (9th Cir. 1996).  The parties to this motion

6   have met and conferred in accordance with Local Rule 7-3 on October 5, 2006.

7       This motion shall be based on the attached memorandum of law in support

8   thereof, the declarations of Lee A. Sherman and Peter Recchia filed and served

9   herewith and upon such other oral or documentary evidence as may be submitted

10   in connection herewith.

11   **DATED:** OCTOBER 26, 2006     **CALLAHAN, MCCUNE & WILLIS APLC**

12

13           By:

14                    LEE A. SHERMAN, ESQ.

15                    Attorney for JOSE L. ACOSTA, JR.,
ROBERT RANDALL, and

16                    BERTRAM ROBISON individually,
and on behalf of all other similarly
situated

17

18

19

20

21

22

23

24

25

26

27

28   joinder.

# TABLE OF CONTENTS

Page

I.    INTRODUCTION............................................................  4

II.   SUMMARY OF PERTINENT FACTS...............................  4

      A.  Experts Ralph Mabey and Elizabeth Warren.......................  4

      B.  Expert Evan Hendricks..............................................  9

      C.  The Meet and Confer Attempt.........................................  11

III.  FEDERAL RULE OF CIVIL PROCEDURE 26(b)(4) PROHIBITS
      EX PARTE COMMUNICATIONS WITH AN OPPOSING
      PARTY'S EXPERT.........................................................  12

IV.   THE COMMUNICATION AND INTERFERENCE BY THE
      SOBOL/CADDELL GROUP WITH PIKE AND ACOSTA'S
      EXPERT WITNESSES WARRANTS DISQUALIFICATION OF
      THOSE FIRMS FROM THESE MATTERS............................  13

IV.   CONCLUSION..............................................................  16

# TABLE OF AUTHORITIES

## CASES

Page

*Burke v. Vose,*
    847 F. Supp. 256, 263 n. 33 (D. R.I. 1993)...................................   15

*Chambers v. Nasco, Inc.*
    501 U.S. 32, 43, 115 L. Ed. 2d 27........................................   2, 13,

*Erickson v. Newmar Corp*
    87 F.3d 298 (9th Cir. 1996)..............................................   2, 12,
                                                                                 13, 15

*Gas-A-Tron of Ariz. V. Union Oil Co.,*
    534 F.2d 1322 (9th Cir.).................................................   13

## SECONDARY SOURCES

Schwarzer, et al., Cal. Practice Guide: *Federal Civil Procedure Before Trial* (The Rutter Guide) 11:470 (2005)...........................................   13,

## RULES

Federal Rules of Civil Procedure
    Rule 26(b)(4)...........................................................   4, 12,
                                                                                 13

Local Rule 7-3...............................................................   3

## I.    INTRODUCTION

From the moment the proposed settlement of this case and the related *Pike* matter were disclosed, the Sobol/Caddell Group has engaged in an unabashed campaign to impede the ability of Pike and Acosta to bring the settlement to the Court for purposes of approval.  Among other tactics employed by the Sobol/Caddell group, they have sought to consolidate the *Acosta* and *Pike* matters in such a manner as to interfere with the settlement, which was denied by this Court.  They have sought improperly and prematurely to be appointed interim class counsel so as to give them the exclusive ability to control settlement negotiations on behalf of the putative class (again, which was denied by this Court in the Equifax litigation) and they have also improperly and without authorization contacted and poisoned expert witnesses already engaged by Acosta and Pike causing these experts to withdraw their services from Acosta and Pike.  Such tactics are prohibited pursuant to Rule 26(b)(4) and warrant the disqualification of the Sobol/Caddell Group from further participation in this litigation.

## II    SUMMARY OF PERTINENT FACTS

### A.    Experts Ralph Mabey and Elizabeth Warren

On August 11, 2006, the parties to the *Acosta* matter reached an agreement on the Memorandum of Understanding for settlement of the *Acosta* matter, which ultimately became the basis for settlement of the *Pike* matter as well.  As this Court knows by now, the Memorandum of Understanding was the result of months of negotiations and five mediations sessions between the parties.  Three days later, on August 14, 2006, counsel for Plaintiffs in the Acosta and Pike matters, contacted retired United States Bankruptcy Judge Ralph Mabey to inquire as to whether he was qualified and willing to serve as an expert on behalf of Acosta for purposes of evaluating and rendering an opinion regarding the value and fairness of the settlement reached in *Acosta*.

1    Lee A. Sherman (hereinafter "Sherman"), counsel on behalf of Acosta and
2 Pike, spoke with Judge Mabey by telephone on August 14th and discussed the facts
3 of the case, the terms of the settlement, the nature of the negotiations, possible
4 objectors and other matters regarding the case.  Dec. Sherman, ¶ 3.  Judge Mabey
5 expressed significant interest in serving as an expert in the matter and followed up
6 the conversation with an e-mail to Sherman that stated among other things:
7    "Lee,
8    It was good to talk to you yesterday.  *I do believe you have effected a*
9    *sea change in bankruptcy-related credit reporting. ...*"  (Emphasis
10    added.)  (See August 15, 2006 e-mail from Mabey to Sherman, a true
11    copy of which is attached hereto as Exhibit A.)
12 Judge Mabey went on to attach a brief bio and ask for the parties in interest for
13 purposes of running a conflicts check.  (See Exhibit A)
14    Over the course of the next few days, Sherman and Judge Mabey
15 corresponded by e-mail and telephone including Sherman providing to Judge
16 Mabey the identities of the parties in interest, the identity of the parties in the
17 White/Hernandez cases, the identities of counsel in the White/Hernandez cases,
18 information and theories regarding the potential objectors and the Memorandum of
19 Understanding.  Dec. Sherman, ¶ 5.  In response, Judge Mabey confirmed that he
20 did not have any conflicts and that his billing rate would be $750.00 per hour for
21 working on this matter.  Id.
22    During the course of the telephonic conversations between Judge Mabey and
23 Sherman, Judge Mabey suggested that Acosta also retain Elizabeth Warren of
24 Harvard Law School as an additional expert.  Judge Mabey indicated that he had a
25 good working relationship with Ms. Warren and that he felt she would be a
26 valuable addition.  Dec. Sherman, ¶ 6.  So, Sherman called Ms. Warren and spoke
27 with her about, among other things, the case, the settlement, the possibility of
28 adding the *Pike* case to the settlement, possible objectors and theories and her

- 5 -

services as an expert with regard to reviewing the settlement for the case.  Dec. Sherman, ¶ 7.  That call took place on or around August 16, 2006.  Id.

On August 17, 2006, Ms. Warren followed up on her call with Sherman and contacted Sherman by e-mail explaining that she had contacted Judge Mabey, discussed the case and the settlement with him and believed that the settlement looked "*quite promising*," particularly with regard to the injunctive measures. (See August 17, 2006, e-mail from Warren to Sherman, a true copy of which is attached hereto as Exhibit B.)  Sherman responded on August 18, 2006, inquiring as to whether Ms. Warren had reviewed the term sheet with Judge Mabey and, believing that Ms. Warren was now on board, asked for a C.V. and a rate sheet. (See August 18, 2006, e-mail from Sherman to Warren, a true copy of which is attached hereto as Exhibit C.)  Warren then responded on August 22, 2006, by acknowledging that she had seen the Memorandum of Understanding, attached her C.V. and quoted her hourly rate at $850.00 per hour.  (See August 22, 2006, e-mail from Ms. Warren to Sherman, a true copy of which is attached hereto as Exhibit D) At this point, Acosta believed Ms. Warren to be a retained expert.  Furthermore, at no time over the next ten days did Ms. Warren express any reservations about the settlement or otherwise express any desire not to serve as Acosta's expert in this matter. Dec. Sherman, ¶ 11.

However, late in the afternoon on September 4, 2006, without warning, Ms. Warren sent an e-mail to Sherman advising that while she applauded the efforts to get the credit reporting agencies to change their practices, she did not think she should serve as Acosta's expert in the matter.  However, she did not give any reason or specifics or otherwise mention in the e-mail that she had discussed the settlement with anyone other than Sherman and Judge Mabey.  (See September 4, 2006, e-mail from Warren to Sherman, a true copy of which is attached hereto as Exhibit E)  Upon receipt of this e-mail on the morning of September 5th, Sherman immediately responded by calling Ms. Warren, but was unable to speak with her

1   and left a message asking for clarification and a call back.  Dec. Sherman, ¶ 13.

2   Sherman also sent an e-mail to Ms. Warren expressing curiosity regarding the

3   sudden change of heart and again asked for a chance to speak with her about it.

4   (See September 5, 2006, e-mail from Sherman to Warren, a true copy of which is

5   attached hereto as Exhibit F)

6        Ms. Warren did not call back, so Sherman called Judge Mabey since it was

7   Judge Mabey that had suggested Ms. Warren and since he indicated that he had a

8   good rapport with her.  Dec. Sherman, ¶ 15.  To Sherman's shock, Judge Mabey

9   indicated that Ms. Warren had advised him that she had been approached about

10   this litigation by friends working with the NCLC[2], disclosed that she had been

11   discussing the matter with the Acosta plaintiffs, discussed the matter with the

12   NCLC attorneys anyway and based on her discussions with them had decided to

13   withdraw her services from the Acosta plaintiffs.  Id.  Ms. Warren confirmed as

14   much when she finally responded to Sherman by e-mail after close of business on

15   September 6th.  In particular, Ms. Warren's September 6th e-mails states:

16        "I had a call from friends working with the National Consumer Law

17        Center.  They didn't know I had talked with you, and they wanted me

18        to talk with me [sic] about being their expert.  Their concerns about

19        the settlement, along with the high regard I have for the NCLC, make

20        me too uneasy to commit to you as an expert."  (See September 6,

21        2006, e-mail from Warren to Sherman, a true copy of which is

22        attached hereto as Exhibit G)

23        In response to Ms. Warren's e-mail, Sherman responded noting that while

24   Ms. Warren had confirmed that she was now not willing to serve as Acosta's

25   expert (despite having reviewed materials, provided a C.V., quoted a billing rate

26   _____

27   [2] The NCLC refers to the National Consumer Law Center which employs Charles

28   Delbaum and Stuart Rossman who are part of the Sobol/Caddell Group and serve

- 7 -

1  and discussed the matter with Sherman), she was not clear about her response to

2  the NCLC and their inquiry about retaining her.  (See September 6, 2006, e-mail

3  from Sherman to Warren, a true copy of which is attached hereto as Exhibit H)

4  Ultimately, Ms. Warren indicated that she believed herself free to assist the

5  Sobol/Caddell Group if she so chose and so, over the course of the next week,

6  Warren and Sherman exchanged additional e-mails with each setting forth their

7  positions on this matter.  (See September 14, 2006, e-mail string back and forth

8  between Warren and Sherman, a true copy of which is attached hereto as Exhibit I)

9  Sherman and Ms. Warren have had no contact since and Acosta currently does not

10  know whether the Sobol/Caddell Group intend to try and use her as an expert in

11  this case or use any information they may have gained from her.[3] Dec. Sherman, ¶

12  19.

13        Notably, in addition to poisoning the relationship between Pike and Acosta

14  and Ms. Warren, the Sobol/Caddell Group's improper and unauthorized ex parte

15  communications with her also poisoned Acosta's relationship with Judge Mabey.

16  Namely, as part of the aforementioned call with Judge Mabey on September 5th,

17  Judge Mabey, at that time, indicated that based on his working relationship with

18  Ms. Warren, he now felt uncomfortable serving as Acosta's expert despite no

19  change in position regarding the settlement.  Dec. Sherman, ¶ 20.  Judge Mabey

20  sadly confirmed as much in an e-mail to Sherman on September 6th, which reads:

21        "Lee,

22        ***For personal reasons only***, I will be unable to act as an expert witness

23        in this matter and therefore decline this engagement. ..." (Emphasis

24        added.)  (See September 6, 2006, e-mail from Mabey to Sherman, a

25        true copy of which is attached hereto as Exhibit J)

26  _____

27  as Plaintiffs' counsel in the White and Hernandez matters.

28  [3] Acosta would certainly object to her involvement in this process if any party

- 8 -

1    Although Sherman called Judge Mabey to discuss this e-mail, Judge Mabey

2  maintained his position and also withdrew his services from Acosta as a result of

3  the ex parte communications by the Sobol/Caddell Group with Ms. Warren.

4       **B.    Expert Evan Hendricks**

5       As this Court is aware, Plaintiff Acosta filed his initial case against Trans

6  Union back in May of 2003, well over three years ago.  During the course of the

7  litigation of the *Acosta* matter, Peter Recchia (hereinafter "Recchia") retained Evan

8  Hendricks (hereinafter "Hendricks") as an expert witness on behalf of Acosta and,

9  in fact, had already paid him $500 for services rendered in the *Acosta* matter

10 several months ago.[4]  Dec. Recchia, ¶ 3.  Notably, the retention of Hendricks by

11 Acosta dates back to at least March of 2006, some 6 months before Hendricks was

12 tampered with by the Sobol/Caddell group.  Id.. (See also Invoice date March 8,

13 2006 attached hereto as Exhibit K).

14      As such, on August 14, 2006, and after the parties in the *Acosta* matter

15 reached a settlement agreement and signed the Memorandum of Understanding,

16 Recchia's office again contacted Hendricks regarding the settlement.  Dec.

17 Recchia, ¶ 4.  At that time, it was Acosta's understanding that Hendricks was to

18 continue serving as an expert with respect to the settlement.  Id.  The next day, on

19 August 15, 2006, Hendricks responded stating he was "on vacation" but requested

20 that Recchia "forward [the] memo of understanding…"  Hendricks apparently

21 understood his retention and the potential need for urgency as he advised Recchia's

22 office that "if the deadline is a ways off, then send it to my PO Box, as I'll be back

23 8/24; if the deadline is tight, make sure it arrives by Monday…"  (See e-mail string

24 from Hendricks to Recchia's employee Greg Sullivan, a true copy of which is

25

26 should seek to introduce her opinion.

27 [4] In addition to the *Acosta* matter, Hendricks served as expert witness on behalf of
   Recchia's client in the matter entitled *Dennis Pike v. Equifax Information Services*,

28 Orange County Superior Court Case No. 03CC10991.

1    attached hereto as Exhibit L)  Thereafter, in accordance with Hendrick's request,
2    Recchia sent the Memorandum of Understanding and other pertinent information
3    to Hendricks. Dec Recchia, ¶ 6.  On August 17, 2006, Recchia's office again
4    contacted Hendricks indicating that Sherman was the lead attorney on the case and
5    inquired as to his availability to discuss the matter with Sherman.  (See Exhibit L)
6    On that same day, Evan Hendricks responded and provided his availability to
7    discuss the matter.  (See Exhibit L)  On August 29, 2006, Hendricks again e-
8    mailed Recchia's office and requested that Recchia pay $500 for "a short affidavit
9    or declaration [he] did earlier in the year" on the *Acosta* matter.  (See Exhibit L;
10   See also Invoice attachment, a true copy of which is attached hereto as Exhibit K)
11   Recchia paid the $500 due to Hendricks. Dec. Recchia, ¶ 8.

On September 2, 2006, Hendricks again suggested an understanding of his
13   retention by Acosta when he contacted Recchia's office and inquired as to the
14   status of the *Acosta* settlement.  In his e-mail, Hendricks stated there are
15   "*'professional' 'plaintiff objectors' that bottom feed on class settlements, so let*
16   *me consult early on to avoid pitfalls.*"  (See Exhibit L)  Thereafter, Recchia made
17   arrangements for Hendricks to travel to Southern California to attend the
18   September 14, 2006, mediation with Justice Trotter, although in the end, Acosta
19   decided that it was not necessary for Hendricks to attend.  See Declaration of Peter
20   Recchia, ¶ 9; Dec. Sherman, ¶ 22.

A few weeks later, on October 2, 2006, Michael Caddell, of the
22   Sobol/Caddell group, e-mailed a letter to Sherman wherein Caddell admitted for
23   the first time contacting Hendricks and that he had worked with Hendricks for
24   "several years."  (See Caddell letter dated October 2, 2006, a true and correct copy
25   of which is attached hereto as Exhibit M)  Critically, Caddell admitted that
26   Hendricks "*advised [Caddell] that he had done two discrete projects for [the]*
27   *team on Pike and Acosta.*"  However, despite Hendricks' express statement that he
28   had worked on *Acosta* and *Pike*, Caddell apparently continued to pursue Hendricks

as "an expert in the *White/Hernandez* cases against Experian" and, in fact, retained him as an expert. (See Exhibit M) Sherman sent a letter in response to Caddell's letter clarifying Plaintiffs' position with respect to Evan Hendricks as Acosta's expert witness. (See Sherman letter dated October 4, 2006 attached as Exhibit N)

On October 3, 2006, after learning this information, Recchia contacted Hendricks regarding Caddell's correspondence. (See October 3, 2006, e-mail from Recchia to Hendricks, a true copy of which is attached hereto as Exhibit O) Recchia then also contacted Hendricks via telephone. During that conversation, Hendricks confirmed several things, including (1) that he and Recchia had previously discussed the *Acosta* matter and he was familiar with the case; (2) that he had received the $500 payment for work he had previously completed on the *Acosta* matter; (3) that he and Recchia had talked about him being retained as an expert for the *Acosta* settlement; (4) that Hendricks was previously scheduled to travel to Southern California to participate in the September 14, 2006, global mediation with Justice Trotter, and most importantly, (5) ***that Hendricks admitted that Caddell had expressed his "concerns" about the Acosta settlement when Caddell and Hendricks spoke***. Dec. Recchia, ¶ 10. In response, Recchia reiterated his position that Acosta had already hired Hendricks as an expert on the *Acosta* and *Pike* matters, that the Sobol/Caddell group had already stated their position as adverse to the *Acosta* settlement and as such, Recchia requested that Hendricks disavow his involvement with the Sobol/Caddell group. Dec. Recchia, ¶ 11. On October 5, 2006, Hendricks e-mailed Recchia and informed him that he would not disavow his involvement with the Sobol/Caddell group and would continue to work on the Experian case. (See October 5, 2006, e-mail from Hendricks to Recchia, a true copy of which is attached hereto as Exhibit P) As a result, the relationship between Hendricks and Acosta was severed.

**C.    The Meet and Confer Attempt**

On October 5, 2006, counsel in the *Acosta* and *Pike* matters conducted a

- 11 -

phone conference with Sobol/Caddell group in order to meet and confer with respect to the issues raised in this motion. During the course of that conversation, Sherman informed Sobol, Caddell and others in the Sobol/Caddell group that Acosta was aware of their ex parte communications with certain expert witnesses, including Elizabeth Warren and Evan Hendricks. Dec. Sherman, ¶ 25. Additionally, the Sobol/Caddell group also acknowledged during the call that on a previous occasion and well before September 14, 2006 mediation, Sherman made certain statements in previous conference calls alluding to the experts he planned to use, although he did not mention them by name. Also, during the call, Sherman advised the Sobol/Caddell group that their conduct caused three experts to withdraw their services from Acosta and Pike. Dec. Sherman, ¶ 26. As such, Sherman requested that the Sobol/Caddell team withdraw as counsel in the related cases, but they declined thus making this motion necessary.[5]

## III.   FEDERAL RULE OF CIVIL PROCEDURE 26(b)(4) PROHIBITS EX PARTE COMMUNICATIONS WITH AN OPPOSING PARTY'S EXPERT

Federal Rules of Civil Procedure Rule 26(b)(4) provides specific ways by which discovery may be obtained from the opposing party's expert witnesses. So, as noted by the 9th Circuit Court of Appeals, "[s]ince existing rules of civil procedure carefully provide for limited and controlled discovery of an opposing party's expert witnesses, all other forms of contact are impliedly prohibited." *Erickson v. Newmar Corp.* 87 F.3d 298, 301 (9th Cir. 1996). Accordingly, "an attorney risks disqualification and professional discipline if he or she has ex parte

---

[5] The Sobol/Caddell group suggested that the experts in question be deposed as to these issues. However, Sherman advised that under the circumstances Acosta believes the well is poisoned. Consequently, and in light of the e-mails attached hereto, Acosta informed the Sobol/Caddell group that he would proceed with his motion. Dec. Sherman ¶ 27.

1   contact with an opposing expert."  Schwarzer, et al., Cal. Practice Guide: *Federal*

2   *Civil Procedure Before Trial* (The Rutter Guide) 11:470 (2005).

3       The Sobol/Caddell group not only had unauthorized contacts with Acosta's

4   experts, they did it *twice* resulting in the loss of three of Acosta's experts.  The

5   Sobol/Caddell group has gone to great lengths to show that they oppose the *Acosta*

6   settlement, so Acosta's experts were clearly opposing.  Moreover, any claim that

7   the contact was innocuous  because the Sobol/Caddell group did not know at the

8   time that Ms. Warren and Hendricks were Acosta's experts would also be

9   disingenuous in light of the fact that the Sobol/Caddell group *continued* the ex

10  parte contacts with both Ms. Warren and Hendricks after their relationship with

11  Acosta was disclosed.  See Exhibit M and Exhibit G.  Therefore, the Sobol/Caddell

12  group is in violation of Federal Rules of Civil Procedure Rule 26(b)(4) and the 9th

13  Circuit holding in *Erickson v. Newmar, Corp.*

14  **IV.   THE COMMUNICATION AND INTERFERENCE BY THE**

15  **SOBOL/CADDELL GROUP WITH PIKE AND ACOSTA'S**

16  **EXPERT WITNESSES WARRANTS DISQUALIFICATION OF**

17  **THOSE FIRMS FROM THESE MATTERS**

18      "Federal courts have the inherent powers to manage their own proceedings

19  and to control the conduct of those who appear before them."  *Id.* (citing *Chambers*

20  *v. Nasco, Inc.*, 501 U.S. 32, 43, 115 L. Ed. 2d 27.).  When a claim such as witness

21  tampering is raised, the "District judges have an arsenal of sanctions they can

22  impose for unethical behavior … includ[ing] monetary sanctions, contempt and the

23  disqualification of counsel."  *Id.* at 44-45.  Critically, "[t]he courts, as well as the

24  bar, have a responsibility to maintain public confidence in the legal profession"

25  which "means that a court may disqualify an attorney for not only acting

26  improperly but also for failing to avoid the appearance of impropriety."  *Id.* (citing

27  *Gas-A-Tron of Ariz. V. Union Oil Co.*, 534 F.2d 1322 (9th Cir.) *cert. denied sub*

28  *nom. Shell Oil Co. v. Gas-A-Tron of Ariz.*, 429 U.S. 861, 50 L. Ed. 2d 139.  Here,

- 13 -

1  the Sobol/Caddell Group's witness tampering warrants sanctions, specifically

2  disqualification as counsel in the pending matters for several reasons.

3      First, the intention of the Sobol/Caddell team seemingly was to interfere

4  with witnesses in the *Pike* and *Acosta* matters and disrupt the approval process for

5  the settlements reached in those matters.  There is no dispute that Ms. Warren and

6  Judge Mabey were in communication with Sherman and both expressed great

7  interest in participating in the settlement.  There is also no dispute that subsequent

8  to these conversations, Ms. Warren was contacted by members of the

9  Sobol/Caddell team, specifically the National Consumer Law Center ("NCLC").

10  Moreover, there is no dispute that after advising the NCLC of her contact with

11  Acosta and further communicating with the NCLC, Ms. Warren informed Sherman

12  that she no longer wished to participate as an expert witness.  Unbelievably, Ms.

13  Warren informed Sherman that although the NCLC "didn't know [she] had talked

14  with [Sherman]", she could no longer participate with Sherman on the *Acosta*

15  matter due to the alleged "concerns [of the NCLC] about the settlement, along with

16  the high regard [she has] for the NCLC".  Whether the NCLC specifically

17  requested Ms. Warren not to participate with the *Acosta* plaintiffs, or utilized other

18  influence to convince her to disavow her involvement, the fact remains that the

19  NCLC's contact with Ms. Warren caused her to cease all involvement with the

20  *Acosta* matter.

21      The second circumstance involved the Sobol/Caddell team's contact with

22  ***another*** expert witness of Pike and Acosta, i.e., Hendricks.  Hendricks was already

23  working with counsel in the *Pike* and *Acosta* matters and had actually worked as an

24  expert on the *Acosta* matter.  Incredibly, Caddell freely admits that Hendricks

25  advised him that "he had done two discrete projects for [the] team on *Pike* and

26  *Acosta*."  Despite this knowledge, Caddell still sought to retain Hendricks as an

27  expert witness in a related matter.  In reality, knowing his own adverse position to

28  the *Acosta* settlement, as soon as Caddell discovered that Hendricks had conducted

- 14 -

1    work on the *Pike* and *Acosta* matters, he should have ceased any further contact

2    with Hendricks. Yet, Caddell continued and, in fact, exacerbated the problem by

3    retaining Hendricks as an expert for pending White/Hernandez matter against

4    Experian.

5         These circumstances are similar to *Erickson v. Newmar Corp.* matter. In

6    *Erickson*, the defense counsel hired one of plaintiff's experts to provide assistance

7    in an unrelated matter. A dispute arose between the parties with respect to the

8    expert witness, and the expert witness resigned prior to trial. Although plaintiff

9    raised the claim of witness tampering prior to trial, the district court did not impose

10   any discipline on defense counsel. The Court of Appeal reversed and instructed,

11   among other things, the district court to impose appropriate sanctions and

12   disciplinary action upon defense counsel for witness tampering, which prevented

13   the plaintiff from receiving a fair trial. Citing, *Burke v. Vose,* 847 F. Supp. 256,

14   263 n. 33 (D. R.I. 1993), the court stated that "[w]itness tampering like perjured

15   testimony tends to subert the entire judicial process and its principle function of

16   ascertainment of the truth." *See Erickson v. Newmar Corp.* 87 F.3d 298 (9th Cir.

17   1996).

18        Here, if Caddell and others such as Len Bennett regularly utilize Evan

19   Hendricks as an expert witness, as Caddell claims in his letter, Hendricks may be

20   subject to their influence. So, even if direct pressure was not applied to Hendricks

21   to conduct no further work on the *Pike* and *Acosta* matter, the implication certainly

22   exists. Regardless, it is apparent that once the Sobol/Caddell group learned that

23   these experts were working with Acosta, the intention of the Sobol/Caddell group

24   was to interfere with Pike and Acosta's ability to proceed to settlement approval.

25   In fact, Caddell's contact with Hendricks caused a rupture in the working

26   relationship between Hendricks and the counsel in the *Pike* and *Acosta* matters.

27        Finally, public policy supports the disqualification of the Sobol/Caddell

28   group. As stated above, witness tampering subverts the entire judicial process. As

- 15 -

1   such, the court maintains a responsibility to maintain public confidence in the legal

2   profession – including disqualifying attorneys for not only acting improperly, but

3   also for failing to avoid the appearance of impropriety.  While one occurrence of

4   witness tampering can be viewed as an accident, two occurrences of witness

5   tampering is a pattern.

6   **V.    CONCLUSION**

7        Based on the foregoing, Plaintiffs Jose L. Acosta, Jr., Robert Randall and

8   Bertram Robison respectfully request the court disqualify Lieff, Cabraser Heimann

9   & Berstein, LLP, Caddell & Chapman and all associated counsel from serving as

10  counsel on behalf of any party with regard to the approval/objection process for the

11  proposed settlement of this and all related matters.

12  **DATED:** OCTOBER 27, 2006          **CALLAHAN MCCUNE & WILLIS APLC**

13

14                         By:   _____

15                                LEE A. SHERMAN, ESQ.
                                  Attorney for the Plaintiffs and on
16                                behalf of all others similarly situated

17                                Peter L. Recchia, Esq. (SBN 77857)
                                  **LAW OFFICES OF PETER L.**
18                                **RECCHIA**
                                  1605 E. 4th Street, Ste. 250
19                                Santa Ana, CA 92701
                                  Tel: (714) 541-2858
20                                Fax: (714) 541-6880
                                  E-mail:    Attnyrecchia@aol.com
21

22                                Gino P. Pietro, Esq. (SBN 129582)

23                                **LAW OFFICES OF GINO**
                                  **PIETRO**
24                                1605 E. 4th Street, Ste. 250
                                  Santa Ana, CA 92701
25                                Tel.: (714) 542-5004
                                  Fax: (714) 542-0815
26                                E-mail:    Pietrolaw@sbcglobal.net

27

28
                                  - 16 -

1  Lee A. Sherman, Esq. (SBN 172198)
   Robert W. Thompson (SBN 106411)
2  Douglas A. Wright, Esq. (SBN 239112)
   **CALLAHAN, McCUNE & WILLIS, APLC**
3  111 Fashion Lane
   Tustin, California 92780-3397
4  Tel.:(714) 730-5700
   Fax:(714) 730-1642
5  E-mail:     Lee_Sherman@cmwlaw.net
               Douglas_Wright@cmwlaw.net
6
   Peter L. Recchia, Esq. (SBN 77857)
7  **LAW OFFICES OF PETER L. RECCHIA**
   1605 E. 4th Street, Ste. 250
8  Santa Ana, CA 92701
   Tel: (714) 541-2858
9  Fax: (714) 541-6880
   E-mail:     Attnyrecchia@aol.com
10
   Gino P. Pietro, Esq. (SBN 129582)
11 **LAW OFFICES OF GINO PIETRO**
   1605 E. 4th Street, Ste. 250
12 Santa Ana, CA 92701
   Tel.: (714) 542-5004
13 Fax: (714) 542-0815
   E-mail:     Pietrolaw@sbcglobal.net
14
   Attorneys for JOSE L. ACOSTA, JR., ROBERT RANDALL, and BERTRAM
15 ROBISON individually, and on behalf of all other similarly situated

16

17                    **UNITED STATES DISTRICT COURT**

18                    **CENTRAL DISTRICT OF CALIFORNIA**

19                          **SOUTHERN DIVISION**

20
   JOSE L. ACOSTA, JR., ROBERT      )   Case No.: SA CV 06-5060 DOC (MLGx)
21 RANDALL, and BERTRAM            )
   ROBISON, individually, and on behalf )  **DECLARATIONS OF LEE A.**
22 of all other similarly situated,      )   **SHERMAN IN SUPPORT OF**
                                   )   **MOTION TO DISQUALIFY**
23          Plaintiffs,            )   **COUNSEL FOR PLAINTIFFS IN**
                                   )   **THE RELATED *WHITE* AND**
24          v.                     )   ***HERNANDEZ* MATTERS**
                                   )
25 TRANS UNION, LLC, and DOES 1 to )   Date:    November 20, 2006
   10, Inclusive                   )   Time:    8:30 a.m.
26                                 )   Place:   Courtroom 9D
            Defendants.            )   Judge:  Hon. David O. Carter
27  ─────────────────────────────  )
   AND ALL RELATED CASES           )
28

                                    1

I, Lee A. Sherman, declare as follows:

1. I am an attorney at law duly admitted to practice before all courts of the State of California and am one of the attorneys of record for plaintiffs in the above-entitled actions *Acosta v. Trans Union, LLC* and *Pike v. Equifax Information System, LLC.*

2. The matters asserted herein are based on my own personal knowledge and if called upon to testify, I could and would competently testify thereto.

3. On August, 14, 2006, I spoke with Judge Mabey by telephone and asked if he was willing to serve as an expert for Acosta with regard to rendering an opinion as to the fairness of the settlement. During the conversation, we discussed the facts of the case, the terms of the settlement, the nature of the negotiations, possible objectors and theories and other matters regarding the case.

4. Attached hereto as Exhibit A is a true and correct copy of the August 15, 2006 e-mail addressed to me from Judge Mabey.

5. Over the course of the next few days, Judge Mabey and I corresponded by e-mail and telephone. In those communications, I provided Judge Mabey the identities of the parties in interest, the identity of the parties in the White/Hernandez cases, the identities of counsel in the White/Hernandez cases, information and theories regarding the potential objectors and the Memorandum of Understanding. In response, Judge Mabey confirmed his interest, that he did not have any conflicts to prevent him from working with us and that his billing rate would be $750.00 per hour for working on this matter.

6. In addition, during the course of the telephonic conversations between Judge Mabey and me, Judge Mabey suggested that Acosta also retain Elizabeth Warren of Harvard Law School as an additional expert. Judge Mabey indicated that he had a good working relationship with Ms. Warren and that he felt she would be a valuable addition.

2

1    7.  So, on or about August 16, 2006, I called Ms. Warren and spoke with her

2    about, among other things, the case, the settlement, the possibility of adding the

3    *Pike* case to the settlement, possible objectors and theories and her services as an

4    expert with regard to reviewing the settlement for the case.

5    8.  Attached hereto as Exhibit B is a true and correct copy of the August 17,

6    2006, e-mail addressed to me from Ms. Warren.

7    9.  Attached hereto as Exhibit C is a true and correct copy of the August 18,

8    2006, e-mail from me to Ms. Warren.

9    10. Attached hereto as Exhibit D is a true and correct copy of the August 22,

10   2006, e-mail addressed to me from Ms. Warren.

11   11. As of August 22, 2006, I believed Ms. Warren to be a retained expert on

12   behalf of Acosta.  Moreover, at no time over the next ten days did Warren express

13   any reservations about the settlement or otherwise express any desire not to serve

14   as Acosta's expert in this matter.

15   12. Attached hereto as Exhibit E is a true and correct copy of the See

16   September 4, 2006, e-mail addressed to me from Ms. Warren wherein she

17   withdraws her services.  I had no notice from Ms. Warren that she had spoken with

18   the NCLC or that this e-mail was coming.

19   13. Upon receipt of the September 4, 2006, e-mail on the morning of

20   September 5th, I immediately responded by calling Ms. Warren, but was unable to

21   speak with her and left a message asking for clarification and a call back.

22   14. Attached hereto as Exhibit F is a true and correct copy of the September

23   5, 2006, e-mail from me to Warren, which also sought clarification of her decision.

24   15. Ms. Warren did not call back, so I called Judge Mabey since it was Judge

25   Mabey that had suggested Ms. Warren and since he indicated that he had a good

26   rapport with her.  To my shock, Judge Mabey indicated that Ms. Warren had

27   advised him that she had been approached about this litigation by friends working

28   with the NCLC, disclosed that she had been discussing the matter with the Acosta

1   plaintiffs, discussed the matter with the NCLC attorneys anyway and based on her

2   discussions with them had decided to withdraw her services from the Acosta

3   plaintiffs.

4        16. Attached hereto as Exhibit G is a true and correct copy of the September

5   6, 2006, e-mail addressed to me from Warren.

6        17. Attached hereto as Exhibit H is a true and correct copy of the September

7   6, 2006, e-mail from me to Warren.

8        18. Attached hereto as Exhibit I is a true and correct copy of the September

9   14, 2006, e-mail string back and forth between Warren and myself.

10       19. I have had no contact with Ms. Warren since the September 14, 2006, e-

11  mail exchange and Acosta currently does not know whether the Sobol/Caddell

12  Group intend to try and use her as an expert in this case or use any information

13  they may have gained from her

14       20. During my conversation with Judge Mabey on September 5th, he

15  indicated that based on his working relationship with Ms. Warren, he now felt

16  uncomfortable serving as Acosta's expert despite no change in position regarding

17  the settlement.

18       21. Attached hereto as Exhibit J is a true and correct copy of the September

19  6, 2006, e-mail addressed to me from Judge Mabey stating that for personal

20  reasons only, he was declining to server as Acosta's expert.

21       22. I learned prior to the September 14, 2006 global mediation that Recchia

22  had made arrangements for Hendricks to appear at the mediation.  However, after

23  discussing it, we (the Acosta team) decided it was not necessary.

24       23. Attached hereto as Exhibit M is a true and correct copy of the Caddell

25  letter dated October 2, 2006.

26       24. Attached hereto as Exhibit N is a true and correct copy of my letter to

27  Caddell dated October 4, 2006.

28       25. On October 5, 2006, counsel in the *Acosta* and *Pike* matters conducted a

4

phone conference with counsel for the *White* and *Hernandez* matters in order to meet and confer with respect to the issues raised in this motion. During the course of that conversation, I informed Sobol, Caddell and others in the Sobol/Caddell group that Acosta was aware of their ex parte communications with certain expert witnesses, including Elizabeth Warren and Evan Hendricks.

26. During that October 5, 2006 call, the Sobol/Caddell group acknowledged that on a previous occasion and well before September 14, 2006 mediation, that I had made certain statements in previous conference calls alluding to the experts Acosta planned to use, although I did not mention them by name. Also, during the call, I advised the Sobol/Caddell group that their conduct caused three experts to disavow their services from Acosta and Pike.

27. During the October 5, 2006 call, the Sobol/Caddell group suggested that the experts in question be deposed as to these issues. However, I advised that under the circumstances I believed the well has been poisoned. I informed the Sobol/Caddell group that I would proceed with this motion.

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

Executed this 27th day of October, 2006 at Tustin, California.

_____
LEE A. SHERMAN, Declarant

5

1   Lee A. Sherman, Esq. (SBN 172198)
    Robert W. Thompson (SBN 106411)
2   Douglas A. Wright, Esq. (SBN 239112)
    **CALLAHAN, McCUNE & WILLIS, APLC**
3   111 Fashion Lane
    Tustin, California 92780-3397
4   Tel.:(714) 730-5700
    Fax:(714) 730-1642
5   E-mail:   Lee_Sherman@cmwlaw.net
              Douglas_Wright@cmwlaw.net
6
    Peter L. Recchia, Esq. (SBN 77857)
7   **LAW OFFICES OF PETER L. RECCHIA**
    1605 E. 4th Street, Ste. 250
8   Santa Ana, CA 92701
    Tel: (714) 541-2858
9   Fax: (714) 541-6880
    E-mail:   Attnyrecchia@aol.com
10
    Gino P. Pietro, Esq. (SBN 129582)
11  **LAW OFFICES OF GINO PIETRO**
    1605 E. 4th Street, Ste. 250
12  Santa Ana, CA 92701
    Tel.: (714) 542-5004
13  Fax: (714) 542-0815
    E-mail:   Pietrolaw@sbcglobal.net
14
    JOSE L. ACOSTA, JR., ROBERT RANDALL, and BERTRAM ROBISON
15  individually, and on behalf of all other similarly situated

16
                    **UNITED STATES DISTRICT COURT**
17
                   **CENTRAL DISTRICT OF CALIFORNIA**
18
                        **SOUTHERN DIVISION**
19

20  JOSE L. ACOSTA, JR., ROBERT          )
    RANDALL, and BERTRAM                  )   Case No.: SA CV 06-5060 DOC (MLGx)
21  ROBISON, individually, and on behalf )
    of all other similarly situated,      )   **DECLARATION OF PETER**
22                                        )   **RECCHIA IN SUPPORT OF**
                    Plaintiffs,           )   **MOTION TO DISQUALIFY**
23                                        )   **COUNSEL FOR PLAINTIFFS IN**
            v.                            )   **THE RELATED** *WHITE* **AND**
24                                        )   *HERNANDEZ* **MATTERS**
    TRANS UNION, LLC, and DOES 1 to       )
25  10, Inclusive                         )   Date:   November 20, 2006
                                          )   Time:   8:30 a.m.
26                  Defendants.           )   Place:  Courtroom 9D
                                          )   Judge:  Hon. David O. Carter
27                                        )
                                          )
    AND ALL RELATED CASES                 )
28

                                   1

I, Peter Recchia, declare as follows:

1. I am an attorney at law duly admitted to practice before all courts of the State of California and am one of the attorneys of record for plaintiffs in the above-entitled actions *Acosta v. Trans Union, LLC* and *Pike v. Equifax Information System, LLC.*

2. The matters asserted herein are based on my own personal knowledge and if called upon to testify, I could and would competently testify thereto.

3. During the course of the litigation of the *Acosta* matter, I retained Evan Hendricks (hereinafter "Hendricks") as an expert witness on behalf of Acosta. Moreover, I have already paid him $500 for services rendered in the *Acosta* matter. I retained Hendricks several months ago and he had performed work on the case as far back as March of 2006, several months before Caddell contacted him.

4. On August 14, 2006 and after the parties in the *Acosta* matter reached a settlement agreement and signed the Memorandum of Understanding, my office again contacted Hendricks regarding the settlement. At that time, it was my understanding that Hendricks was to continue serving as an expert with respect to the settlement. I communicated that to him as well.

5. Attached hereto as Exhibit L is a true and correct copy of e-mail string between Hendricks and my employee Greg Sullivan related to these matters.

6. In accordance with Hendrick's request, I sent the Memorandum of Understanding and other pertinent information regarding the Acosta settlement to Hendricks for his review.

7. Attached hereto as Exhibit K is a true and correct copy of the March 8, 2006, invoice from Evan Hendricks for certain work completed on the Acosta v. Trans Union matter.

8. In further efforts to facilitate Hendricks' work with us on the Acosta settlement, I made arrangements for Hendricks to travel to Southern California to

1    attend the September 14, 2006 global mediation with Justice Trotter. However, in

2    the end, my team decided that it was not necessary for Hendricks to attend.

3        9. Attached hereto as Exhibit O is a true and correct copy of the October 3,

4    2006, e-mail from me to Hendricks.

5        10. On October 3, 2006, I also contacted Hendricks via telephone. During

6    that conversation, Hendricks confirmed several things to me, including (1) that he

7    and I had previously discussed the *Acosta* matter and he was familiar with the case;

8    (2) that he had received the $500 payment for work he had previously completed

9    on the *Acosta* matter; (3) that he and I had previously talked about him being

10   retained as an expert for the *Acosta* settlement; (4) that Hendricks was previously

11   scheduled to travel to Southern California to participate in the September 14, 2006,

12   global mediation with Justice Trotter, and importantly, (5) that Hendricks admitted

13   to me that Caddell had expressed his "concerns" about the settlement when

14   Caddell and Hendricks spoke.

15       11. In response, I reiterated to Hendricks my position that my team had

16   already hired him as an expert on the *Acosta* and *Pike* matters, that the

17   Sobol/Caddell group had already stated their position as adverse to the *Acosta*

18   settlement and I therefore requested that Hendricks disavow his involvement with

19   the Sobol/Caddell team. However, Hendricks would not.

20       12. Attached hereto as Exhibit P is a true and correct copy of the October 5,

21   2006, e-mail addressed to me from Hendricks.

22       I declare under penalty of perjury, under the laws of the State of California,

23   that the foregoing is true and correct.

24       Executed this 27th day of October, 2006 at Santa Ana, California.

25

26                                    PETER L. RECCHIA, Declarant

27

28   G:\PLF\050100\Pike v Equifax\p-dec-pr-mdq.doc

3

EXHIBIT A

Recycled   Stock # EXA-5-B

Legal Tabs Co. 1-800-322-3022

Recycled   Stock # EXA-5-B

**EXHIBIT A**

## Lee A. Sherman

| | |
|---|---|
| **From:** | Mabey, Ralph R. [RMabey@Stutman.com] |
| **Sent:** | Tuesday, August 15, 2006 11:32 AM |
| **To:** | Lee A. Sherman |
| **Cc:** | Weatherly, Carol |
| **Subject:** | Possible Spam:TransUnion Settlement |

Lee,

It was good to talk to you yesterday.  I do believe you have effected a sea change in bankruptcy-related credit reporting.

Attached is a very brief bio.

If you would like me to conduct a conflicts check, kindly give me the relevant parties in interest.

Ralph
**Ralph R. Mabey**
**Stutman, Treister & Glatt, P.C.**
**185 South State Street**
**Suite 1300**
**Salt Lake City, Utah 84111-1537**
**801-257-7976 (Salt Lake City)**
**310-228-5720 (Los Angeles)**

**************************************************************
This Internet e-mail contains confidential information
which is intended only for the addressee and which may
be privileged under applicable law.  Do not read, copy
or disseminate it if you are not the addressee.  If you
have received this message in error, please notify the
sender immediately and delete it.  Thank you.
**************************************************************

10/27/2006

LAW  OFFICES



PROFESSIONAL
CORPORATION

is pleased to announce that

## RALPH R. MABEY

has joined the firm as senior of counsel

You may contact Mr. Mabey at:

Stutman, Treister & Glatt, P.C.
185 South State Street
Suite 1300
Salt Lake City, UT 84111-1537
Direct Dial: 801-257-7976
Facsimile: 866-763-0412
rmabey@stutman.com
www.stutman.com

387242v1

Ralph R. Mabey received his law degree from Columbia University where he served on the Board of Editors of the Columbia Law Review. He served with distinction as a United States Bankruptcy Judge from 1979 to 1983 and his judicial opinions have been cited frequently by courts and scholars.

Mr. Mabey is the immediate past Chair of the American College of Bankruptcy. He previously served as an appointee of the Chief Justice of the United States to the U.S. Judicial Conference's Advisory Committee on the Bankruptcy Rules. He has also served as the managing editor of the Norton Bankruptcy Law Adviser, on the Editorial Advisory Board of the American Bankruptcy Law Journal and currently serves as a contributing author to Collier on Bankruptcy.

Mr. Mabey is a member of the National Bankruptcy Conference's Executive Committee, the American Law Institute and the American Bar Association's Select Advisory Committee on Business Reorganization (SABRE). He teaches bankruptcy-related subjects at the J. Reuben Clark Law School, Brigham Young University.

Mr. Mabey's service in complex workout, bankruptcy, reorganization and litigation matters includes: A.H. Robins Company (as examiner with expanded powers); Dow Corning (as counsel for certain bondholders); Columbia Gas System (as equity committee counsel); Federated Department Stores (as counsel for the official pre-merger bondholders committee); TWA (as counsel for the pilots); American Airlines (as counsel for the pilots); Enron (as special counsel for the debtor); Cajun Electric Power Cooperative (as chapter 11 trustee); Boston Chicken (as an expert witness); and At Home/Excite (as an expert witness).

Courts, parties and the Department of Justice (U.S. Trustee Program) have appointed Mr. Mabey to serve as mediator, arbitrator, examiner or trustee in Alaska, Arizona, California, Louisiana, Michigan, New York, Texas, Utah, Virginia and Washington, D.C.

Mr. Mabey is a member of the New York and Utah Bars.

EXHIBIT B

Legal Tabs Co. 1-800-322-3022

Recycled   Stock # EXA-5-B

Legal Tabs Co. 1-800-322-3022

Recycled  Stock # EXA-5-B

**EXHIBIT  B**

**Lee A. Sherman**

**From:** Elizabeth Warren [ewarren@law.harvard.edu]
**Sent:** Thursday, August 17, 2006 8:52 PM
**To:** Lee A. Sherman
**Subject:** Trans Union settlement

Mr. Sherman,

I spoke with Ralph Mabey today about the case.  He and I agree that the settlement looks quite promising, particularly in the injunctive relief you have worked out with Trans Union.  Ralph is going to look into the case a bit deeper, and then he and I will talk again.  I'd like to know more.

I hope this email will serve as a temporary response.  I'm planning to go to Legoland for the next two days with two quite special young ladies, and then I'll be flying back to Cambridge early next week.  Perhaps we can talk again next week after Ralph and I have had another chance to visit.

ew

EXHIBIT C

Recycled   Stock # EXA-5-B

Legal Tabs Co. 1-800-322-3022

Recycled   Stock # EXA-5-B

**EXHIBIT C**

**Lee A. Sherman**

| | |
|---|---|
| **From:** | Elizabeth Warren [ewarren@law.harvard.edu] |
| **Sent:** | Tuesday, August 22, 2006 6:00 PM |
| **To:** | Lee A. Sherman |
| **Subject:** | RE: Trans Union settlement |



Warren CV July
2006.doc (121 K...

Lee,

Please call me Elizabeth.

Yes, Ralph sent me the Memo of Understanding.  I hope to talk with
him again soon.

Attached is my current cv.  I bill my time at $850 an hour.

ew


At 10:15 AM 8/18/2006, you wrote:
>Thank you for the response and please call me Lee.  I'm not sure
>whether your e-mail means that you have seen the Memo of Understanding
>(the term
>sheet) that I sent to Ralph or not, but if not, he has it now (and some
>more details) and he can certainly share that with you.  Please do call
>me after you've had a chance to speak further with Ralph or if you
>simply have any additional questions you wish to discuss.  I would also
>like to get your cv and rate sheet when you get a chance.  In the
>meantime, enjoy Legoland and all its wonders.  I have been there with my
>own two special young ladies on a few occasions.
>
>-----Original Message-----
>From: Elizabeth Warren [mailto:ewarren@law.harvard.edu]
>Sent: Thursday, August 17, 2006 8:52 PM
>To: Lee A. Sherman
>Subject: Trans Union settlement
>
>
>Mr. Sherman,
>
>I spoke with Ralph Mabey today about the case.  He and I agree that the
>settlement looks quite promising, particularly in the injunctive relief
>you have worked out with Trans Union.  Ralph is going to look into the
>case a
>bit deeper, and then he and I will talk again.  I'd like to know more.
>
>I hope this email will serve as a temporary response.  I'm planning to
>go to Legoland for the next two days with two quite special young
>ladies, and
>then I'll be flying back to Cambridge early next week.  Perhaps we can
>talk
>again next week after Ralph and I have had another chance to visit.
>
>ew

i



Legal Tabs Co. 1-800-322-3022

Recycled   Stock # EXA-5-B

**EXHIBIT D**

Legal Tabs Co. 1-800-322-3022

Recycled  Stock # EXA-5-B

**EXHIBIT  D**

**Lee A. Sherman**

| | |
|---|---|
| **From:** | Elizabeth Warren [ewarren@law.harvard.edu] |
| **Sent:** | Tuesday, August 22, 2006 6:00 PM |
| **To:** | Lee A. Sherman |
| **Subject:** | RE: Trans Union settlement |



Warren CV July
2006.doc (121 K...
                Lee,

Please call me Elizabeth.

Yes, Ralph sent me the Memo of Understanding.  I hope to talk with
him again soon.

Attached is my current cv.  I bill my time at $850 an hour.

ew


At 10:15 AM 8/18/2006, you wrote:
>Thank you for the response and please call me Lee.  I'm not sure
>whether your e-mail means that you have seen the Memo of Understanding
>(the term
>sheet) that I sent to Ralph or not, but if not, he has it now (and some
>more details) and he can certainly share that with you.  Please do call
>me after you've had a chance to speak further with Ralph or if you
>simply have any additional questions you wish to discuss.  I would also
>like to get your cv and rate sheet when you get a chance.  In the
>meantime, enjoy Legoland and all its wonders.  I have been there with my
>own two special young ladies on a few occasions.
>
>-----Original Message-----
>From: Elizabeth Warren [mailto:ewarren@law.harvard.edu]
>Sent: Thursday, August 17, 2006 8:52 PM
>To: Lee A. Sherman
>Subject: Trans Union settlement
>
>
>Mr. Sherman,
>
>I spoke with Ralph Mabey today about the case.  He and I agree that the
>settlement looks quite promising, particularly in the injunctive relief
>you have worked out with Trans Union.  Ralph is going to look into the
>case a
>bit deeper, and then he and I will talk again.  I'd like to know more.
>
>I hope this email will serve as a temporary response.  I'm planning to
>go to Legoland for the next two days with two quite special young
>ladies, and
>then I'll be flying back to Cambridge early next week.  Perhaps we can
>talk
>again next week after Ralph and I have had another chance to visit.
>
>ew

1

EXHIBIT E

**EXHIBIT E**

**Lee A. Sherman**

| | |
|---|---|
| **From:** | Elizabeth Warren [ewarren@law.harvard.edu] |
| **Sent:** | Monday, September 04, 2006 5:49 PM |
| **To:** | Lee A. Sherman |
| **Cc:** | rmabey@stutman.com |
| **Subject:** | class action |

Lee,

I appreciate your invitation to join you as an expert in the pending
litigation with the credit reporting agencies.  It appears that the
agencies have been in flagrant violation of the law, and I applaud
any effort to get them to change their practices.  I think, however,
that I should not serve as your expert.  I don't think I could be as
supportive of the settlement as you would need.

Perhaps we'll have another chance to work together in the future.

Elizabeth Warren

EXHIBIT F

Recycled   Stock # EXA-5-B

Legal Tabs Co. 1-800-322-3022

Recycled   Stock # EXA-5-B

**EXHIBIT F**

## Lee A. Sherman

**From:** Lee A. Sherman
**Sent:** Tuesday, September 05, 2006 7:14 AM
**To:** 'Elizabeth Warren'
**Subject:** RE: class action

Dr. Warren:

I just called and spoke with your assistant about this, but could you give me a call regarding your message when you get a chance. I am curious as to your decision and also about thoughts you have concerning my settlement.

I appreciate your assistance.

Lee Sherman

-----Original Message-----
From: Elizabeth Warren [mailto:ewarren@law.harvard.edu]
Sent: Monday, September 04, 2006 5:49 PM
To: Lee A. Sherman
Cc: rmabey@stutman.com
Subject: class action


Lee,

I appreciate your invitation to join you as an expert in the pending litigation with the credit reporting agencies. It appears that the agencies have been in flagrant violation of the law, and I applaud any effort to get them to change their practices. I think, however, that I should not serve as your expert. I don't think I could be as supportive of the settlement as you would need.

Perhaps we'll have another chance to work together in the future.

Elizabeth Warren

1

EXHIBIT G

Recycled Stock #EXA-5-B

Legal Tabs Co. 1-800-322-3022

Recycled   Stock #EXA-5-B

**EXHIBIT  G**

**Lee A. Sherman**

| | |
|---|---|
| **From:** | Elizabeth Warren [ewarren@law.harvard.edu] |
| **Sent:** | Tuesday, September 05, 2006 6:10 PM |
| **To:** | Lee A. Sherman |
| **Subject:** | RE: class action |

Lee,

I'm sorry, but we've just started classes, so things are pretty hectic right now.

I had a call from friends working with the National Consumer Law Center. The didn't know I had talked with you, and they wanted me to talk with me about being their expert. Their concerns about the settlement, along with the high regard I have for the NCLC, makes me too uneasy to commit to you as an expert.

I wanted you to know right away so that you would be wasting time waiting for me.

ew


At 11:14 AM 9/5/2006, you wrote:
>Dr. Warren:
>
>I just called and spoke with your assistant about this, but could you
>give me a call regarding your message when you get a chance.  I am
>curious as to your decision and also about thoughts you have concerning
>my settlement.
>
>I appreciate your assistance.
>
>Lee Sherman
>
>-----Original Message-----
>From: Elizabeth Warren [mailto:ewarren@law.harvard.edu]
>Sent: Monday, September 04, 2006 5:49 PM
>To: Lee A. Sherman
>Cc: rmabey@stutman.com
>Subject: class action
>
>
>Lee,
>
>I appreciate your invitation to join you as an expert in the pending
>litigation with the credit reporting agencies.  It appears that the
>agencies have been in flagrant violation of the law, and I applaud any
>effort to get them to change their practices.  I think, however, that I
>should not serve as your expert.  I don't think I could be as
>supportive of the settlement as you would need.
>
>Perhaps we'll have another chance to work together in the future.
>
>Elizabeth Warren

EXHIBIT H

Legal Tabs Co. 1-800-322-3022

Recycled   Stock # EXA-5-B

Legal Tabs Co. 1-800-322-3022

Recycled   Stock # EXA-5-B

**EXHIBIT H**

**Lee A. Sherman**

**From:** Lee A. Sherman
**Sent:** Wednesday, September 06, 2006 8:40 AM
**To:** 'Elizabeth Warren'
**Subject:** RE: class action

Elizabeth:

Thank you for your e-mail and I am truly disappointed that we will not be working together on this case. Moreover, I thank you for your time and input to date. I truly believe that the settlement we reached with Trans Union is a good and fair one that will ultimately be approved by the Court.

In any event, while I understand that you are no longer willing to serve as our expert, your message is unclear as to what you told the NCLC in response to their inquiry. More to the point, it is certainly our position that we have consulted with you, shared information with you and believed we retained you for this matter. As such, we trust that you advised them that you would also not be able to serve as an expert on their behalf in this matter. Please confirm.

Sincerely,

Lee Sherman

-----Original Message-----
From: Elizabeth Warren [mailto:ewarren@law.harvard.edu]
Sent: Tuesday, September 05, 2006 6:10 PM
To: Lee A. Sherman
Subject: RE: class action

Lee,

I'm sorry, but we've just started classes, so things are pretty hectic right now.

I had a call from friends working with the National Consumer Law Center. The didn't know I had talked with you, and they wanted me to talk with me about being their expert. Their concerns about the settlement, along with the high regard I have for the NCLC, makes me too uneasy to commit to you as an expert.

I wanted you to know right away so that you would be wasting time waiting for me.

ew

At 11:14 AM 9/5/2006, you wrote:
>Dr. Warren:
>
>I just called and spoke with your assistant about this, but could you
>give me a call regarding your message when you get a chance. I am
>curious as to your decision and also about thoughts you have concerning
>my settlement.
>
>I appreciate your assistance.
>
>Lee Sherman
>
>-----Original Message-----

>From: Elizabeth Warren [mailto:ewarren@law.harvard.edu]
>Sent: Monday, September 04, 2006 5:49 PM
>To: Lee A. Sherman
>Cc: rmabey@stutman.com
>Subject: class action
>
>
>Lee,
>
>I appreciate your invitation to join you as an expert in the pending
>litigation with the credit reporting agencies.  It appears that the
>agencies have been in flagrant violation of the law, and I applaud any
>effort to get them to change their practices.  I think, however, that I
>should not serve as your expert.  I don't think I could be as
>supportive of the settlement as you would need.
>
>Perhaps we'll have another chance to work together in the future.
>
>Elizabeth Warren

EXHIBIT I

Legal Tabs Co. 1-800-322-3022

Recycled   Stock # EXA-5-B

**EXHIBIT I**

**Lee A. Sherman**

| | |
|---|---|
| **From:** | Elizabeth Warren [ewarren@law.harvard.edu] |
| **Sent:** | Thursday, September 14, 2006 3:36 PM |
| **To:** | Lee A. Sherman |
| **Subject:** | RE: class action |

Lee,

And I am on record with my position and intentions.

ew


At 11:08 AM 9/14/2006, you wrote:
>Elizabeth:
>
>My message was not intended as a threat or any attempt to "strong-arm"
>anyone.  I merely wanted to be on record with our position and
>intentions on this issue, which I now am.
>
>Sincerely,
>
>Lee Sherman
>
>-----Original Message-----
>From: Elizabeth Warren [mailto:ewarren@law.harvard.edu]
>Sent: Thursday, September 14, 2006 7:00 AM
>To: Lee A. Sherman
>Subject: RE: class action
>
>
>Lee,
>
>Don't threaten me.  You called to ask if I would serve as your expert.
>Asking the question does not give you any claim on me.
>
>I will offer expert reports when I think they are appropriate.  You
>cannot strong-arm me either into writing such a report for you or
>withholding one from someone else.
>
>ew
>
>
>
>At 09:53 AM 9/11/2006, Lee A. Sherman wrote:
> >Elizabeth:
> >
> >Thank you for your response, though I am somewhat surprised to read
> >it.
> >
> >While I do not see the necessity of debating the points raised in
> >your message below at this time, please understand that I have a very
> >different take on the matter.  Consequently, and with all due
> >respect, please be advised that if you should attempt to serve as an
> >expert on behalf of any other party in this matter, we will
> >immediately move for your disqualification.  Please understand that I
> >do not make this statement as a threat, but rather to make my record
> >in writing of my intent, so there can be no claim that I was silent
> >on this issue.
> >
> >Sincerely,
> >
> >Lee Sherman

1

> >
> >-----Original Message-----
> >From: Elizabeth Warren [mailto:ewarren@law.harvard.edu]
> >Sent: Friday, September 08, 2006 4:30 PM
> >To: Lee A. Sherman
> >Subject: RE: class action
> >
> >
> >Lee:
> >
> >I'm sorry this won't work out.
> >
> >I am quite surprised to hear that you believe you have retained me.
> >Our single telephone conversation ended with my making it quite clear
> >that I wasn't sure if I was willing to serve as your expert and that
> >I would talk with Ralph Mabey and get back to you later.
> >
> >I have no present plans to serve as an expert for NCLC, but I am free
> >to do so.  If I decide that I want to serve as their expert, then I
> >will do so.
> >
> >ew
> >
> >
> >At 12:40 PM 9/6/2006, Lee A. Sherman wrote:
> > >Elizabeth:
> > >
> > >Thank you for your e-mail and I am truly disappointed that we will
> > >not be working together on this case.  Moreover, I thank you for
> > >your
> >
> > >time and input to date.  I truly believe that the settlement we
> > >reached with
> > >
> > >Trans Union is a good and fair one that will ultimately be approved
> > >by the Court.
> > >
> > >In any event, while I understand that you are no longer willing to
> > >serve as our expert, your message is unclear as to what you told
> > >the NCLC in response to their inquiry.  More to the point, it is
> > >certainly our position that we have consulted with you, shared
> > >information with you and believed we retained you for this matter.
> > >As such, we trust that you advised them that you would also not be
> > >able to serve as an expert on their behalf in this matter.  Please
> > >confirm.
> > >
> > >Sincerely,
> > >
> > >Lee Sherman
> > >
> > >
> > >-----Original Message-----
> > >From: Elizabeth Warren [mailto:ewarren@law.harvard.edu]
> > >Sent: Tuesday, September 05, 2006 6:10 PM
> > >To: Lee A. Sherman
> > >Subject: RE: class action
> > >
> > >
> > >Lee,
> > >
> > >I'm sorry, but we've just started classes, so things are pretty
> > >hectic right now.
> > >
> > >I had a call from friends working with the National Consumer Law
> > >Center.  The didn't know I had talked with you, and they wanted me
> > >to

2

```
>
> > >talk with me about being their expert.  Their concerns about the
> > >settlement, along with the high regard I have for the NCLC, make me
> > >too
> >
> > >uneasy to commit to you as an expert.
> > >
> > >I wanted you to know right away so that you would be wasting time
> > >waiting for me.
> > >
> > >ew
> > >
> > >
> > >At 11:14 AM 9/5/2006, you wrote:
> > > >Dr. Warren:
> > > >
> > > >I just called and spoke with your assistant about this, but could
> > > >you
> >
> > > >give me a call regarding your message when you get a chance.  I
> > > >am curious as to your decision and also about thoughts you have
> > > >concerning
> > > >
> > > >my settlement.
> > > >
> > > >I appreciate your assistance.
> > > >
> > > >Lee Sherman
> > > >
> > > >-----Original Message-----
> > > >From: Elizabeth Warren [mailto:ewarren@law.harvard.edu]
> > > >Sent: Monday, September 04, 2006 5:49 PM
> > > >To: Lee A. Sherman
> > > >Cc: rmabey@stutman.com
> > > >Subject: class action
> > > >
> > > >
> > > >Lee,
> > > >
> > > >I appreciate your invitation to join you as an expert in the
> > > >pending litigation with the credit reporting agencies.  It
> > > >appears that the agencies have been in flagrant violation of the
> > > >law, and I
> >
> > > >applaud any effort to get them to change their practices.  I
> > > >think,
> >
> > > >however, that I
> > > >
> > > >should not serve as your expert.  I don't think I could be as
> > > >supportive of the settlement as you would need.
> > > >
> > > >Perhaps we'll have another chance to work together in the future.
> > > >
> > > >Elizabeth Warren
```

EXHIBIT J

Recycled   Stock # R-EXA-5-B

Legal Tabs Co. 1-800-322-3022

Recycled   Stock # R-EXA-5-B

**EXHIBIT  J**

## Lee A. Sherman

**From:**     Mabey, Ralph R. [RMabey@Stutman.com]
**Sent:**     Wednesday, September 06, 2006 10:27 AM
**To:**       Lee A. Sherman
**Cc:**       Weatherly, Carol
**Subject:**  Trans Union Settlement

Lee,

For personal reasons only, I will be unable to act as an expert witness in this matter and therefore decline this
engagement.

Thank you for your interest.

Cordially,

**Ralph R. Mabey**
**Stutman, Treister & Glatt, P.C.**
**185 South State Street**
**Suite 1300**
**Salt Lake City, Utah 84111-1537**
**801-257-7976 (Salt Lake City)**
**310-228-5720 (Los Angeles)**

*************************************************************
This Internet e-mail contains confidential information
which is intended only for the addressee and which may
be privileged under applicable law.  Do not read, copy
or disseminate it if you are not the addressee.  If you
have received this message in error, please notify the
sender immediately and delete it.  Thank you.
*************************************************************



Recycled   Stock # R-EXA-5-B

Legal Tabs Co. 1-800-322-3022

Recycled   Stock # R-EXA-5-B

**EXHIBIT  K**

# INVOICE

March 08, 2006

To:   Peter Recchia & Gino Pietro
      Law Offices
      E-Mailed to: Peter Recchia, Gino Pietro & Greg Sullivan

EXPERT WITNESS              *Acosta v. Trans Union*

Document Review, Consulting, Declaration

February 23-24, 2005

   2 Hours @ $250 Per Hour  ---              $500

**TOTAL DUE**                              **$500**

PLEASE REMIT TO:   PRIVACY TIMES
                   P.O. BOX 302
                   CABIN JOHN, MD 20818
                   301 229 7002  PHONE
                   301 229 8011 FAX
                   evan@privacytimes.com

EXHIBIT L

Recycled   Stock # R-EXA-5-B

Legal Tabs Co. 1-800-322-3022

Recycled   Stock # R-EXA-5-B

**EXHIBIT L**

## Douglas Wright

| | |
|---|---|
| **From:** | Greg Sullivan [gpsesq@gmail.com] |
| **Sent:** | Thursday, October 26, 2006 3:48 PM |
| **To:** | Douglas Wright; Lee A. Sherman; Attnyrecchia@aol.com; Gino |
| **Subject:** | Fwd: Tentative Settlement of Trans Union Class Action |



---------- Forwarded message ----------
From: **Evan Hendricks** <evan@privacytimes.com>
Date: Aug 29, 2006 11:25 AM
Subject: Re: Tentative Settlement of Trans Union Class Action
To: Greg Sullivan <gpsesq@gmail.com>

Hey Greg,

Could you tell Peter that I believe I'm still owed $500 for a short affidavit or declaration I did earlier in the year. (Invoice attached)


Evan Hendricks
www.PrivacyTimes.com
www.CreditScoresandCreditReports.com
(301) 229 7002

----- Original Message -----
**From:** Greg Sullivan
**To:** evan
**Sent:** Thursday, August 17, 2006 4:33 PM
**Subject:** Re: Tentative Settlement of Trans Union Class Action

Thanks for the response. Lee Sherman is the lead attorney in this case working along with Peter Recchia and Gino Pietro, with whom you are familiar. Lee would like to call you directly, after this introduction, to discuss your retainer and the specific requirements of your declaration in support of settlement of this class action case. We do not have an immediate deadline, but how soon will you be available to have a discussion with Lee? I have your cell phone number, your number while in Oregon, but please confirm with me your Maryland number. When will you be available for a telephone conversation with Lee Sherman?
Thanks, Greg

On 8/15/06, **evan** <evan@privacytimes.com> wrote:
> Greg
>
> I'm on vacation and only checking email every other day or so.

Yes, please forward memo of understnading; if deadline is a ways off, then send it to my PO Box, as I'll be back 8/24; if the deadeline is tight, make sure it arrivees by Monday @; at the library computers I cant always download attachments

Evan Hendricks
c/o
820 NW Skyline Crest
Portland OR 97229
(503) 292 1926

Anything urgent, call lmy cell 202 365 0947 cell

Evan Hendricks
Privacy Times
PO Box 302
Cabin John MD 20818

or (FEDEX)

8321 Tomlinson Ave
Bethesda, MD 20817
> Hello again Evan.  We have reached a Memorandum of Understanding to settle
> our Trans Union Class Action related to bankruptcy reporting.   We wish to
> retain you to prepare a declaration in support of our settlement, similar
> to
> the declaration you did in the South Carolina, Clark case.
> Please advise what your fee is for this project.  Provide us a retainer
> agreement and, if agreeable, we will forward you a copy of our Memorandum
> of
> Understanding and fee and the time frame for our fairness and settlement
> approval hearing at which time we will utilize your declaration.

EXHIBIT M

Recycled   Stock # R-EXA-5-B

Legal Tabs Co. 1-800-322-3022

Recycled   Stock # R-EXA-5-B

**EXHIBIT  M**

# CADDELL & CHAPMAN
### ATTORNEYS AT LAW
THE PARK IN HOUSTON CENTER
1331 LAMAR, SUITE 1070
HOUSTON, TEXAS 77010-3027

MICHAEL A. CADDELL
BOARD CERTIFIED CIVIL TRIAL LAW
TEXAS BOARD OF LEGAL SPECIALIZATION
mac@caddellchapman.com

TEL (713) 751-0400
FAX (713) 751-0906
www.caddellchapman.com

October 2, 2006

BY EMAIL

Mr. Lee A. Sherman
Callahan, McCune & Willis, APLC
111 Fashion Lane
Tustin CA 92780-3397

Re:   White/Hernandez

Dear Lee:

I have known and worked with Evan Hendricks for several years.  He was my retained expert in the *Clark* FCRA litigation in South Carolina back in 2003.  We have worked with him on other cases as well, as have other members of our team, particularly Len Bennett.

I recently contacted Evan to discuss the *White/Hernandez* litigation with him.  He advised me that he had done two discrete projects for your team on *Pike* and *Acosta*.  While he did not feel that he had been placed on general retainer with respect to those cases and was unclear as to whether you considered him a "retained expert" for those lawsuits (and setting aside the fact that the project he performed in *Acosta* must necessarily have been with respect to the state court proceeding, rather than the newly filed federal case), I advised him that we could not work with him or discuss the work that he had done on those cases without checking with you first.

We have not discussed with him your proposed settlement in *Pike* and *Acosta*, much less discussed any of the particulars of that proposed settlement with him.  Furthermore, unless you advise us that you no longer require Evan's services in *Pike* and *Acosta*, we will not approach him to work with us on our own litigation against Trans Union and Equifax in this area.  However, if you have concluded your work with Evan and no longer require his services, we would like to retain him as a consulting expert with respect to the *White/Hernandez* cases against Equifax and Trans Union.  Please advise on that as soon as possible.

In the meantime, this is to place you on notice that we have retained Evan as an expert in the *White/Hernandez* cases against Experian (we only did so after confirming with him that he had not been retained by your group with respect to Experian, and that, indeed, he had never discussed Experian with any member of your group.)  As I am sure you would want

EQUIFAX-BK-COR-MIS-SHERMAN-002.WPD

October 2, 2006
Page 2

us to do with respect to Equifax and Trans Union–assuming you consider Evan to be a "retained expert" and wish to continue his status as such in *Pike* and *Acosta*–you should not discuss with Evan any of your thoughts or negotiations with Experian, nor query Evan concerning any of the communications we have had with him concerning our dealings with Experian.

Please do not hesitate to contact me if you have any questions concerning this issue. I felt it was important to bring this to your attention so there would be no misunderstanding.

Sincerely,

*Mike Caddell*

Michael A. Caddell

MAC/vsh

cc:    Ms. Cynthia B. Chapman
      Mr. George Y. Niño
      Mr. Stuart Rossman
      Mr. Dan Wolf
      Mr. Charles Juntikka
      Mr. Charles Delbaum
      Mr. Len Bennett
      Mr. Mitch Toups

EQUIFAX-BK-COR-MIS-SHERMAN-002.WPD

EXHIBIT N

Legal Tabs Co. 1-800-322-3022

Recycled   Stock # R-EXA-5-B

**EXHIBIT N**

Legal Tabs Co. 1-800-322-3022

Recycled  Stock # R-EXA-5-B

**EXHIBIT  N**

A PROFESSIONAL LAW CORPORATI          ORANGE COUNTY · LOS ANGELES · S    JEGO · SAN FRANCISCO · FRESNO

# Callahan McCune & Willis

| | | | |
|---|---|---|---|
| PETER M. CALLAHAN | CHRISTOPHER J. ZOPATTI | MICHAEL SAN FILIPPO | OF COUNSEL |
| LARRY N. WILLIS | MICHAEL C. ROGERS | ANGELA M. ROSSI | GARRETT S. GREGOR |
| ROBERT W. THOMPSON | THOMAS M. RUTHERFORD, JR | BROOKE P. FITZGERALD | |
| O. BRANDT CAUDILL, JR | LAURIE D. RAU | TRISHA L. COZAD | ADMINISTRATOR |
| SCOTT S. BLACKSTONE | ANNETTE C. CLARK | DOUGLAS A. WRIGHT | KENNETH D. BERG |
| NANCY J. DEPASQUALE-ERKER | DENISE M. CALKINS | ALISON L. ROTHI | |
| RICHARD J. RITCHIE | EVETTE L. SMITH | ANGELA PAK | SCOTT M. McCUNE |
| NANCY E. POWER | JOAN E. TRIMBLE | BRYAN M. THOMAS | (1948-1989) |
| COLRENA K. JOHNSON | KATHLEEN M. HARTMAN | MATTHEW G. BROWN | |
| NORMA S. MARSHALL | JOHN W. FOX | AMID T. BAHADORI | |
| LEE A. SHERMAN | JENNIFER L. CALLAHAN | VIRGINIA S. ALSPAUGH | |
| JAMES M. HANSEN | DEAN B. JACOBSEN | YVETTE N. SIEGEL | |
| TONI KERN | LEEH A. DIBELLO | | |
| KELLIE S. CHRISTIANSON | CHARLES S. RUSSELL | | |
| | KATHLEEN E. ALPARCE | | |

October 4, 2006

**VIA FACSIMILE AND U.S. MAIL**

Mike Caddell, Esq.
CADDELL & CHAPMAN
Attorneys at Law
The Park in Houston Center
1331 Lamar, Suite 1070
Houston, Texas 77010-3027

      Re: *White/Hernandez/Acosta/Pike*

Dear Mr. Caddell:

We have now had a chance to review your correspondence of October 2, 2006 regarding our expert Evan Hendricks.  Please allow this to serve as our response thereto and notice of our objection to your continued effort to tamper with our expert witnesses in this matter.

As you were aware, we retained Mr. Hendricks some time ago for the specific purpose of evaluating and rendering an opinion as to the fairness of the settlement reached in *Acosta* and later in *Pike*.  Furthermore, our retention of Mr. Hendricks included telephone conferences, submission of materials to him for review, discussion of the facts of the case, discussion of the settlement, and discussion of the claims against all of the credit reporting agencies including the Federal matters.  In fact, our dealings with him included our agreement to his billable rate and his actual performance of tasks related to this matter beyond that which could be referred to as "discrete projects".  Consequently, we absolutely contend that Mr. Hendricks is our expert in this matter and that any attempt by you to retain him for any matter related to *Acosta* and/or *Pike* is inappropriate and objectionable.  Furthermore, any attempt by you to try and claim that because the *Experian* matter is not part of the settlement, it is appropriate for you to try and retain our expert when you have already announced your intention to object to the settlement that we believe is in the best interest of the class in the related matters is flat out disingenuous.

A ... SSIONAL LAW CORPORATION

Attn: Michael A. Caddell, Esq.
Re: *Acosta/Pike/White/Hernandez*
October 4, 2006
Page 2



Callahan
McCune
& Willis

In addition to the foregoing, we also take issue with your representation that you "have not discussed with him [our] proposed settlement in *Pike* and *Acosta*..." Specifically, when Mr. Recchia and Mr. Pietro contacted Mr. Hendricks to follow up on your letter, he advised that you had, among other things, "mentioned concerns" about the settlement. Hence, it seems to us that you have not only contacted our expert and attempted to retain him on a matter you know full well to be related, but you have also gone so far as to tamper with him even after you knew of his involvement with us.

In conjunction, it bears mention that the aforementioned conduct occurred after we specifically advised you of our objection to your previous tampering with Elizabeth Warren. As you recall, we had initially made contact with Ms. Warren, discussed the settlement with her, forwarded her the MOU and believed her to be retained only to later learn that a member of your team had subsequently (and without even advising us of the contact) contacted her, learned of her involvement with us, discussed the settlement with her and then asked her not to go forward as our expert.

Frankly, your conduct (and that of your teammates with regard to Ms. Warren) violates the rule set forth in *Erickson v Newmar Corp.* (9th Cir. 1996) 87 F.3rd 298, which prohibits ex parte contact with an opposing party's expert. In fact, we are currently in the process of discussing whether to immediately proceed with a motion to disqualify your entire team based on these actions. We will notify you shortly of our intentions in this regard, so that we can meet and confer before filing our motion, if necessary.

In the meantime, please consider this our formal objection to your attempted retention of Mr. Hendricks and our demand for your immediate dissociation from him with regard to any matter related to the pending FCRA matters before Judge Carter.

Sincerely,

Callahan, McCune & Willis, APLC

LEE A. SHERMAN

LAS:amp

EXHIBIT O

Legal Tabs Co. 1-800-322-3022

Recycled   Stock # R-EXA-5-B

Legal Tabs Co. 1-800-322-3022

Recycled   Stock # R-EXA-5-B

**EXHIBIT O**

## Douglas Wright

**From:**      Lee A. Sherman
**Sent:**      Wednesday, October 25, 2006 12:50 PM
**To:**        Douglas Wright
**Subject:**   FW: expert


-----Original Message-----
**From:** Attnyrecchia@aol.com [mailto:Attnyrecchia@aol.com]
**Sent:** Tuesday, October 03, 2006 7:59 AM
**To:** evan@privacytimes.com
**Cc:** Lee A. Sherman
**Subject:** expert

Dear Evan,

   I saw a copy of the letter sent by Michael Caddell concerning your status as an expert for our Federal cases vs TransUnion and Equifax and his hiring you for the Experian case.
   It was my understanding that we had hired you to be a witness for our two cases. I will contact you via phone to confirm our status.

Peter Recchia

EXHIBIT P

Recycled   Stock # R-EXA-5-B

Legal Tabs Co. 1-800-322-3022

Recycled   Stock # R-EXA-5-B

**EXHIBIT P**

**Douglas Wright**

| | |
|---|---|
| **From:** | Evan Hendricks [evan@privacytimes.com] |
| **Sent:** | Thursday, October 05, 2006 9:20 AM |
| **To:** | Attnyrecchia@aol.com |
| **Cc:** | pietrolaw@sbcglobal.net |

**Subject:** BK Cases

Peter & Gino,

In our conversation yesterday, you asked that I disavow my work with the Cadell group on the Experian case.  I have chosen not to do that, and to work on the Experian case for which I have been retained.

My sense from our conversation was that you would decline to retain me if I chose to work with the Cadell group.  If my understanding is correct, I respect your decision.  As I said yesterday, I have not read the Memo of Understanding or any other materials that might have been included in the package you sent.  Please advise whether you prefer that I return those materials to you, or dispose of them.

It's always unfortunate when there are "competing classes."  My strong preference is that all plaintiffs come together.  My strong hope is that this will still happen in these BK cases.

Please feel free to call me if you have questions or would like to discuss this further.  I enjoyed our earlier work together and my door is always open.
(I have a 12:30 conference call and 2pm TV interview today, Thursday)

Evan Hendricks
www.PrivacyTimes.com
www.CreditScoresandCreditReports.com
(301) 229 7002

10/27/2006

1

## PROOF OF SERVICE

2   STATE OF CALIFORNIA )
                        )
3   COUNTY OF ORANGE    )

4   I am employed in the County of Orange, State of California, I am over the age of 18 years
    and not a party to the within action; my business address is 111 Fashion Lane, Tustin,
5   California.

6   On this date, I served the foregoing document described as:

7   **NOTICE OF MOTION AND MOTION TO DISQUALIFY COUNSEL FOR
    PLAINTIFFS IN THE RELATED WHITE AND HERNANDEZ MATTERS;
8   MEMORANDUM OF LAW IN SUPORT THEREOF; DECLARATIONS OF
    LEE A. SHERMAN, PETER RECCHIA**

9
    Said document was served on the interested party or parties in this action by placing a
10  true copy thereof, enclosed in a sealed envelope, and addressed as noted below.

11  I am familiar with our firm's practice of collection and processing correspondence for
    mailing.  Under that practice it would be deposited with the U.S. Postal Service on that
12  same day with postage thereon fully prepaid at Tustin, California in the ordinary course
    of business. I am aware that on motion of the party served, service is presumed invalid if
13  the postal cancellation date or postage meter date is more than one working day after the
    date of deposit for mailing in this declaration.
14
      __XX__   **(By Mail)**  I deposited such envelope in the mail at Tustin, California.  The
15  envelope was mailed with postage thereon fully prepaid.

16  ____    (By Facsimile)  In addition to regular mail, I sent this document via facsimile,
    number(s) as listed on the attached mailing list.
17
    ____    (By Personal Service)  Such envelope was delivered by hand to the below
18  addressee.

19  ____    (By Overnight Mail)  I arranged for such envelope was delivered to the following
    addresses by overnight mail.
20
    Executed on October 27, 2006, at Tustin, California.
21
    I declare under penalty of perjury under the laws of the State of California that the above
22  is true and correct.  I further declare that I am employed in the office of a member of the
    bar of this court at whose direction the service was made.
23

24                                                  _____
                                                    ANGELA M. PETERSON
25

26

27

28

- 1 -

1

2

## ALL COUNSEL MAILING LIST

3

4   Julia B. Strickland, Esq.
    Stephen J. Newman, Esq.
5   Brian C. Frontino, Esq.
    STROOCK & STROOCK & LAVAN LLP
6   2029 Century Park East, Suite 1800
    Los Angeles, CA 90067-3086
7   Tel# (310) 556-5800
    Fax# (310) 556-5959

8   Michael W. Sobol
    Bill Lann Lee
9   LIEFF CABRASER HEIMANN &
    BERNSTEIN LLP
10  275 Battery Street, 30th Floor
    San Francisco, CA 94111-3339
11  Tel: (415) 956-1000
    Fax: (415) 956-1008

12
    Charles W. Juntikka
13  CHARLES JUNTIKKA & ASSOC.
    11 West, 42nd Street, 12th Floor
14  New York,, NY 10036
    (212) 315-3755

15
    Daniel Wolf
16  DANIEL WOLF LAW OFFICES
    1220 N. Street, NW
17  Suite PH 2
    Washington, DC 20005
18  (202) 772-1154

19  Mike Caddell
    Cynthia B. Chapman
20  CADDELL & CHAPMAN
    1331 Lamar, Suite 1070
21  Houston, TX 77010-3027
    Tel: (713) 751-0400
22  Fax: (713) 751-0906

23
    Kevin A. Dorse
24  Daniel J. McLoon
    Michael G. Morgan
25  Scott Philip Shaw
    JONES DAY
26  555 S. Flower Street, 15th Floor
    Los Angeles, CA 90071-2300
27  (213) 489-3939

28

1    Thomas R. Malcolm
     JONES DAY
2    3 Park Plaza, Suite 100
     Irvine, CA 92614-6232
3    (949) 851-3939

4
     Cindy D. Hanson
5    Craig E. Bertschi
     Kali Wilson Beyah
6    Bradley J. Miller
     KILPATRICK & STOCKTON
7    1100 Peachtree Street, Suite 2800
     Atlanta, GA 30309-4530
8    Tel:(404) 815-6500
     Fax: (404) 815-6555
9
     Thomas P. Quinn, Jr.
10   NOKES & QUINN
     450 Oceans Avenue
11   Laguna Beach, CA 92651
     (949) 376-3055
12
     Albert Finch
13   ERICKSEN ARBUTHNOT KILDUFF
     DAY AND LINDSTROM
14   111 Sutter Street, Suite 575
     San Francisco, CA 94101
15   (415) 362-7126

16   Stuart Rossman
     Charles Delbaum
17   NATIONAL CONSUMER LAW CENTER
     77 Summer Street, 10th Floor
18   Boston, MA 02110
     (615) 542-8010
19
     Leonard A. Bennett
20   Mathew Erausquin
     CONSUMER LITIGATION ASSOC., PC
21   12515 Warwick Boulevard, Suite 201
     Newport News, Virginia 23606
22   Fax: (757) 930-3662

23   Mitchell A. Toups
     WELLER, GREEN, TOUPS &
24   TERRELL, LLP
     Bank of America Tower
25   2615 Calder Street, Suite 400
     Beaumont, TX 77702
26   Fax: (409) 832-8577

27

28