Michael W. Sobol (State Bar No. 194857)
(msobol@lchb.com)
Paul A. Moore (State Bar No. 241157)
(pmoore@lchb.com)
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Michael A. Caddell (admitted *pro hac vice*)
(mac@caddellchapman.com)
Cynthia B. Chapman (State Bar No. 164471)
(cbc@caddellchapman.com)
George Y. Niño (State Bar No. 144623)
(gyn@caddellchapman.com)
CADDELL & CHAPMAN
1331 Lamar, Suite 1070
Houston, Texas 77010-3027
Telephone: (713) 751-0400
Facsimile: (713) 751-0906

*Attorneys for Plaintiffs*

[Additional Counsel listed on signature page]

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| JOSE L. ACOSTA, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> TRANS UNION, LLC, *et al.*, <br><br> Defendants. | Case No.: 06-cv-5060 DOC (MLG) <br><br> **OPPOSITION TO EX PARTE APPLICATION OF DEFENDANTS TRANS UNION LLC AND EQUIFAX INFORMATION SERVICES LLC AND THE *ACOSTA/PIKE* PLAINTIFFS FOR AN ORDER STRIKING THE BRIEF OF THE *WHITE/HERNANDEZ* PLAINTIFFS FOR NON-COMPLIANCE WITH THE LOCAL RULES, REQUIRING THE *WHITE/HERNANDEZ* PLAINTIFFS TO PRODUCE DOCUMENTS AND MAKE DECLARANTS AVAILABLE FOR DEPOSITIONS, AND MODIFYING THE BRIEFING AND HEARING SCHEDULE ON THE MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT** |

BY FAX

DOCKETED ON CM
JAN 1 2 2007
BY

582660.1

OPPOSITION TO EX PARTE APPLICATION
*Acosta v. Trans Union* - Case No. 06-cv-5060 DOC (MLG)

# TABLE OF CONTENTS

**Page**

BACKGROUND ........................................................................................................1

ARGUMENT ............................................................................................................4

    I.    The Fact That The White/Hernandez Plaintiffs Inadvertently Filed An Opposition That Exceeds Local Rule 11-6's Page Limits Without First Seeking Leave To Do So Provides No Basis For Relieving The Acosta/Pike Parties Of Their Obligation To Adhere To the Scheduling Order They Negotiated. .........................................................................................5

    II.    The Acosta/Pike Parties Have No Right To Depose The White/Hernandez Plaintiffs' Declarants In Connection With The Present Motions And Their Desire To Do So Provides No Basis For Relieving Them Of Their Obligations Under The Stipulated Order. ..........................................................................................9

CONCLUSION........................................................................................................12

# TABLE OF AUTHORITIES

**Page**

## CASES

*Amchem Prods. v. Windsor*
  521 U.S. 591 (1997) ..................................................................................... 6

*Stutz Motor Car of Am. v. Reebok Int'l*
  909 F. Supp. 1353 (C.D. Cal. 1995) ............................................................. 7

## RULES

Fed. R. Civ. P. 5 ................................................................................................ 3
Fed. R. Civ. P. 7 ................................................................................................ 3
Fed. R. Civ. P. 11 .............................................................................................. 3
Fed. R. Civ. P. 23 .............................................................................................. 6
Fed. R. Civ. P. 30 ............................................................................................ 10
Local Rule 7-9 .................................................................................................. 3
Local Rule 11-6 ........................................................................................ 3, 5, 7

The *White/Hernandez* plaintiffs file this memorandum in opposition to the *ex parte* application of defendants Trans Union LLC, Equifax Information Services LLC and the *Acosta/Pike* plaintiffs for an order modifying the hearing and briefing schedule on the motion for preliminary approval of settlement, requiring the *White/Hernandez* plaintiffs to produce documents and make declarants available for depositions, and striking their brief for noncompliance with the local rules. For the reasons set forth below, that application is wholly unjustified and should be rejected in its entirety.

## BACKGROUND

In late September 2006, the *White/Hernandez* plaintiffs and the parties to the *Acosta/Pike* Settlement commenced a lengthy and difficult negotiating process relating to the litigation of the matters presently before this Court. Those negotiations culminated in a Stipulation and Order relating to Discovery and Scheduling Matters (the "Stipulated Order") in which the *White/Hernandez* plaintiffs reluctantly made a number of highly significant concessions, including:

(a) an agreement that stayed discovery in their actions against Trans Union and Equifax for *four* months pending the filing and resolution of the *Acosta/Pike* parties' motion for preliminary approval of a proposed settlement (the "Settlement") that they had been secretly discussing with each other since the beginning of the year;

(b) a schedule that gave the *Acosta/Pike* parties until November 17, 2006—*three months* from the time counsel for Trans Union informed this Court that the class-wide claims in the *White/Hernandez* cases had been "settled" (and *two months* from the time of the final mediation session before Justice John H. Trotter)—to file their motion for preliminary approval and until January 8, 2007 to file their reply; and

(c) a hearing date for their preliminary approval motion that would not take place until January 22, 2007.

In exchange for these concessions, the *White/Hernandez* plaintiffs obtained the right to:

(a) present their objections to the Settlement at the preliminary approval hearing without the need for filing a formal motion to intervene; and

(b) certain very limited discovery pertaining to the Settlement (namely, copies of any documents that were exchanged by the parties during the

negotiating process, copies of the very limited discovery responses that Trans Union gave in the *Acosta* case and the right to depose any witnesses that would be testifying in favor of the proposed settlement).

From the outset, the *White/Hernandez* plaintiffs took the position that the hearing should take place in early to mid-December, but the *Acosta/Pike* parties insisted that it be delayed until late January because of the time that they ostensibly needed to produce the limited and readily available discovery the *White/Hernandez* plaintiffs had requested and to finalize their Settlement and supporting papers. In the end, the *White/Hernandez* plaintiffs reluctantly agreed to the January 22, 2007 date—confident that, given this Court's declared policy concerning the sanctity of hearing dates, there would be no further delay.

The agreed schedule gave counsel for the *White/Hernandez* plaintiffs a limited four-week window between the November 17, 2006 deadline for the filing of the preliminary approval motion and the December 15, 2006 deadline for the filing of their opposition to review the *Acosta/Pike* parties' documents, depose their witnesses, prepare the *White/Hernandez* plaintiffs' opposition brief and work with their experts to complete declarations in support of that brief.

To facilitate their ability to meet the demands of that difficult schedule, the *White/Hernandez* plaintiffs negotiated and obtained the *Acosta/Pike* plaintiffs' consent to provide them with a copy of the finalized Settlement by November 7, 2006. The *Acosta/Pike* plaintiffs violated that agreement and, as a result, the *White/Hernandez* plaintiffs did not see the Settlement until the *Acosta/Pike* parties filed their motion for preliminary approval on November 17, 2006.

Furthermore, though the Stipulated Order (at ¶ 4) required them "to produce all documents exchanged with the *Acosta* and/or the *Pike* plaintiffs, relating to the settlement and the mediation process," Trans Union and Equifax refused to provide the *White/Hernandez* plaintiffs any drafts of the Settlement that they exchanged with the *Acosta/Pike* plaintiffs following the final mediation session before Justice Trotter on September 14, 2006. In so doing, defendants correctly maintained that

the discovery to which the *White/Hernandez* plaintiffs were entitled was strictly limited to that set forth in the Stipulated Order, but wrongly asserted that the post-mediation settlement drafts were not covered by that order.

As a consequence of the *Acosta/Pike* parties refusal to comply with their commitments, the challenging schedule that the *White/Hernandez* plaintiffs had negotiated became that much more difficult. During the four weeks they had to prepare their Opposition, counsel for the *White/Hernandez* plaintiffs were taxed to the limits of their endurance as they worked long hours, late into the night and through the Thanksgiving holiday to meet the December 15 deadline.[1]

Prior to filing their Opposition,[2] counsel for the *White/Hernandez* plaintiffs reviewed the Local Rules of this District—focusing their attention on the local analogues to Fed. R. Civ. P. 5, entitled "Service and Filing of Pleadings and Other Papers," and Fed. R. Civ. P. 7, entitled "Pleadings Allowed, Forms of Motion", including, in particular, Local Rule 7-9 entitled "Opposing Papers." As no page limits are contained in those rules and as no other rule appeared to be relevant, counsel for the *White/Hernandez* plaintiffs mistakenly believed that no page limits existed for briefs under the Local Rules. They did not think to review the local analogue to Fed. R. Civ. P. 11, mistakenly assuming that, like its federal counterpart, that rule was limited to signing requirements and sanctions. Accordingly, counsel for the *White/Hernandez* plaintiffs were unaware of the page limits contained in Local Rule 11-6 and ended up filing a brief that substantially

---

[1] Given the *Acosta/Pike* parties insistence on needing three months from the time they announced they had reached agreement on a "settlement" to the time they would be ready to file it with the Court, the *White/Hernandez* plaintiffs reasonably assumed that it would be undergoing substantial revision. Thus, they were not able to begin working with their experts in earnest, to review and analyze the credit reports from which their databases were created or to draft their opposition until the *Acosta/Pike* parties' motion was filed on November 17.

[2] The *Acosta/Pike* parties accuse (*ex parte* at 5) the *White/Hernandez* plaintiffs of not serving defendants until 6:30 p.m. on the day their Opposition was due and of not serving the *Acosta/Pike* plaintiffs at all. In fact, the *White/Hernandez* plaintiffs served their Opposition on all of the *Acosta/Pike* parties by regular mail before it was filed and e-mailed defendants a courtesy copy that same day at 6:30 p.m.

exceeded those limits without seeking leave to do so.

Upon learning of their error from counsel for Trans Union, counsel for the *White/Hernandez* plaintiffs filed an *ex parte* application seeking a *nunc pro tunc* waiver of Local Rule 11-6's page limits on their Opposition and apologized to this Court and all counsel for not having done so before.[3]

Seizing on this error, the *Acosta/Pike* parties are now trying to use it as an excuse to undo the Stipulated Order they negotiated by enlarging from **24 to 66 days** (an increase of **275%**) the time by which they would be required to file their reply and by postponing the hearing date by **two months**—all to the detriment of the *White/Hernandez* plaintiffs and the classes they seek to represent whose claims would remain stayed in the interim. This Court should not sanction this kind of cynical gamesmanship.

## ARGUMENT

By their present *ex parte* application, the *Acosta/Pike* parties request that this Court strike the *White/Hernandez* plaintiffs' Opposition and undo the Stipulated Order by granting them a 40-day extension to file their reply and a 60-day postponement of the hearing date. As they neither filed nor joined the *Acosta/Pike* plaintiffs' motion for preliminary approval of the Settlement, neither Trans Union (which is the only party to have signed the *ex parte* application) nor Equifax have any standing to seek such relief. Furthermore, the fact that the *Acosta/Pike* plaintiffs appear to have joined in an application that would prevent this Court from having access to the arguments and authorities that would enable it to determine whether the Settlement is in the interest of the classes they seek to represent itself demonstrates that they are incapable of fulfilling that role. However, leaving aside the fact that defendants cannot seek the relief set forth in this application and that the *Acosta/Pike* plaintiffs should not be seeking it, there is no basis whatsoever for

---

[3] The reasons why this Court should deny the *Acosta/Pike* parties request that it strike the *White/Hernandez* plaintiffs' Opposition are fully set forth in that *ex parte* application, which are adopted herein by reference.

granting the *Acosta/Pike* parties' requests, which would require this Court to rewrite the Stipulated Order they negotiated and which would be seriously prejudicial to the *White/Hernandez* plaintiffs and the classes they seek to represent.

## I. The Fact That The *White/Hernandez* Plaintiffs Inadvertently Filed An Opposition That Exceeds Local Rule 11-6's Page Limits Without First Seeking Leave To Do So Provides No Basis For Relieving The *Acosta/Pike* Parties Of Their Obligation To Adhere To the Scheduling Order They Negotiated.

The principal reason the *Acosta/Pike* parties have given for their requested postponement is that the *White/Hernandez* plaintiffs filed an Opposition that exceeds the page limits set forth in Local Rule 11-6 without first seeking leave to do so.

The premise underlying this argument is that the page limitations in the Local Rules are intended for the benefit of the litigants. That, of course, is incorrect. Those rules are for the benefit of this Court, which, as set forth below, would have been deprived of information essential to its ability to make an informed and intelligent ruling on the *Acosta/Pike* parties' motion had the *White/Hernandez* plaintiffs addressed the multitude of issues in that motion in a brief of just 25 pages.

The *Acosta/Pike* parties complain, however, that the *White/Hernandez* plaintiffs' submission of a more comprehensive Opposition than they anticipated leaves them with what they now deem to be insufficient time to prepare their response. The *Acosta/Pike* parties would have found themselves in the same predicament they are in now had the *White/Hernandez* plaintiffs filed a shorter opposition, as any such opposition would have made the same arguments (albeit in a much abbreviated and less informative form) and been supported by the same declarations and evidence as the brief they did file.

In short, the *Acosta/Pike* parties' present problems are a function not of the length of the *White/Hernandez* opposition, but of the fatally defective Settlement they are trying to push past this Court, the tainted negotiating process that led to that Settlement and the glaring deficiencies in the *Acosta/Pike* plaintiffs' legal team

that defendants hand-picked to be their partners in that process. Needless to say, these are problems that the *Acosta/Pike* parties could not cure whether they were given 24 days or 24 weeks to prepare their reply.

At any rate, the *White/Hernandez* plaintiffs cannot be responsible for the *Acosta/Pike* parties' dissatisfaction with their own agreement giving themselves 24 days for that reply. It was, after all, the *Acosta/Pike* parties' decision to frontload the schedule by giving themselves ***three months*** after they had announced their Settlement to file their preliminary approval motion. Moreover, the 24 days allowed for the *Acosta/Pike* parties' reply is much longer than the normal reply period and, indeed, is almost as long as the period allotted for the *White/Hernandez* plaintiffs' opening brief.

Likewise, it was the *Acosta/Pike* parties' decision (no doubt borne of necessity) to file a brief in support of their Settlement that made no effort to calculate the litigation value of their claims, to quantify the cash value of the Settlement's economic benefits or to ascertain the impact of its injunctive relief provisions on preventing the challenged practices from recurring. Furthermore, though virtually all of the *White/Hernandez* plaintiffs' challenges to the settlement had been previewed in their reply brief in support of their motion to consolidate, the *Acosta/Pike* parties chose to completely ignore them in their opening brief. Finally, the *Acosta/Pike* parties' did not even take four full pages to discuss why class certification is appropriate in these cases—hardly the kind of treatment that would enable this Court to give the kind of "undiluted, even heightened, attention" to the criteria under Fed. R. Civ. P. 23 that is required in order to protect the rights of absent class members in the settlement context. *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997). In short, the *Acosta/Pike* parties could have taken advantage of the three months they had negotiated for themselves to prepare a meaningful defense of their Settlement in an opening brief of their own, but they chose not (or were unable) to do so.

Having no other options, the *Acosta/Pike* parties resort to misstatement and hyperbole in an effort to persuade this Court to save them from themselves—baldly asserting (at 7) that the *White/Hernandez* plaintiffs have "willfully disobeyed the rules" and tried "to put one over on the court." Not only are these irresponsible accusations unsupported by any evidence whatsoever, they depend on the facially absurd proposition that counsel for the *White/Hernandez* plaintiffs would risk the striking of their Opposition and everything they had negotiated for—to say nothing of Rule 11 sanctions—on the infinitesimally small chance that they would be able to sneak their transparently non-compliant brief past both this Court and three sets of opposing counsel.

Nor should the fact that the *White/Hernandez* plaintiffs filed a brief that exceeded Rule 11-6's page limit have come as any surprise to the *Acosta/Pike* parties. After all, their motion was, in reality, several motions-in-one, including a motion for class certification, a motion for preliminary approval of the Settlement and a motion for appointment of lead class counsel. Those multiple motions (which include a 32 page Settlement and a 9 page proposed order, both of which contain a large number of critical provisions that require separate attention) raise very serious issues of national importance affecting the rights of millions of consumers in two separate complex cases against two different defendants. Under the rules, the *White/Hernandez* plaintiffs could have filed separate shorter briefs addressing the various distinct motions, two separate briefs in each of the two different cases, and/or separate briefs on behalf of different plaintiffs. *See, e.g., Stutz Motor Car of Am. v. Reebok Int'l*, 909 F. Supp. 1353, 1358-59 (C.D. Cal. 1995) (rejecting plaintiff's argument that defendant had violated local page limit rule "by filing two briefs . . . , which combined exceed the thirty-five page limitation," as there were "two operative complaints, as this is a relatively complex . . . dispute, and as defendant's papers are not cumulative or prolix").

Nowhere does the Stipulated Order restrict the *White/Hernandez* plaintiffs

from filing multiple briefs or from taking the more sensible option of seeking leave to file a single and lengthier brief in which all of the issues presented in the *Acosta/Pike* parties' motion could be comprehensively addressed. Such a comprehensive filing in these cases is essential lest this Court be denied access to vital information and arguments that it needs to have in order to make an intelligent and informed judgment about the potential propriety of a Settlement that would affect the statutory rights of some 14 million consumers.

It appears, however, that the *Acosta/Pike* parties assumed that the *White/Hernandez* plaintiffs would file the same kind of abbreviated, superficial and uninformative brief in opposition to their motions for preliminary approval, class certification and appointment of class representatives and counsel that the *Acosta/Pike* plaintiffs filed in support of those motions. That they were wrong in that assumption is no basis for relieving them of their obligation to comply with this Court's scheduling order—particularly given this Court's warning that it would tolerate no deviations from such orders except in the most extreme and dire of circumstances. *See, e.g.*, 8/14/06 Hearing Tr., at p. 37 ("And I won't be listening to late filings or continuance reasons. And even a stipulation between all of you— these dates, by the way, will never be changed now, unless one of you dies or has a serious illness. And I'm serious about that.").

The burden on the *Acosta/Pike* parties of having to respond to the Opposition within 24 days does not constitute such circumstances. Indeed, if counsel for the *White/Hernandez* plaintiffs were able to prepare their *opening brief* and assist their experts in preparing their declarations in support thereof in less than one month, than surely counsel for the *Acosta/Pike* parties (with all of their resources and manpower) can prepare their *reply brief* in a similar time frame.

At any rate, however difficult it might be for the *Acosta/Pike* counsel to meet the demands of the schedule they negotiated, there is no justification for making the *White/Hernandez* plaintiffs suffer the consequences of their poor planning. The

January 22, 2007 hearing date represented the absolute outer limit of what the *White/Hernandez* plaintiffs were willing to agree to and for good reason. Owing in no small part to defendants' litigation tactics, no discovery in the *White/Hernandez* cases has taken place since those cases were filed more than a year ago. Each day of additional delay is another day in which they and the class members they seek to represent will be prevented from rebuilding their lives, as defendants continue to report erroneous financial information about them—some of which they admit that they have the present ability to correct.[4]

## II. The *Acosta/Pike* Parties Have No Right To Depose The *White/Hernandez* Plaintiffs' Declarants In Connection With The Present Motions And Their Desire To Do So Provides No Basis For Relieving Them Of Their Obligations Under The Stipulated Order.

As an additional ground for urging this Court to undo the schedule that they negotiated, the *Acosta/Pike* parties argue that it does not leave them sufficient time to depose the *White/Hernandez* plaintiffs' declarants or the documents they relied upon. In support of that argument, the *Acosta/Pike* parties cite the Stipulated Order, which they assert (at 8) obligates *the parties* "promptly to produce" their declarants for deposition. They are wrong.

By its terms, the Stipulated Order provides (at ¶ 7) that "[t]he parties *in the Acosta Federal Action and the Pike action* will promptly make each and every individual who submits a declaration *in support of the Motion for Preliminary Approval* available for deposition, on or before December 8, 2006, *to the plaintiffs in the White and Hernandez actions*." Knowing that they would not otherwise have sufficient time to depose any witnesses that might be offered in support of preliminary approval, the *White/Hernandez* plaintiffs negotiated for this provision in partial consideration for their agreeing to a complete stay of all discovery in their

---

[4] In view of such prejudice and all the other circumstances, should this Court be inclined to grant the *Acosta/Pike* parties an extension of time, it should give them no more than an additional week and, if it is inclined to grant them all the relief they seek, it should lift the stay of discovery in the *White/Hernandez* cases against Trans Union and Equifax.

Case 2:06-cv-05060-DOC-MLG   Document 68   Filed 12/26/06   Page 13 of 16   Page ID #:1426

actions against *Trans Union* and *Equifax*. (Stipulated Order at ¶ 2.)[5]

In negotiating the Stipulated Order, the *Acosta/Pike* parties did not seek or obtain any provision that would give them a corresponding right to depose any declarants the *White/Hernandez* plaintiffs might use or to obligate the *White/Hernandez* plaintiffs to make those declarants available for deposition in less time than would be required in the ordinary course under Fed. R. Civ. P. 30. The *Acosta/Pike* parties' failure to do so is fatal to their argument. As Trans Union and Equifax vigorously maintained in refusing the *White/Hernandez* plaintiffs' demand that they produce drafts of the Settlement, the discovery to which the parties to the Stipulated Order are entitled was strictly limited to what was provided for in that Order. Reckoning that they would have no reason to depose any declarants the *White/Hernandez* plaintiffs might use, the *Acosta/Pike* parties did not negotiate for the right to do so and, thus, they have no such right.

At any rate, the *Acosta/Pike* parties were correct in their reckoning. There is no point in their deposing any of the *White/Hernandez* plaintiffs' experts in connection with the present motion, because nothing they might say can alter the fact that the Settlement is fatally defective, was the product of a tainted negotiating process, and was reached with putative class counsel who were hand-picked by defendants and who have proven themselves unfit to serve in that role.

Make no mistake about it, the *White/Hernandez* plaintiffs are more than willing to produce their experts and other witnesses for deposition. Defendants will be permitted to take those depositions in the context of an adversarial litigation of the merits of this dispute just as soon as they drop their pursuit of their sham Settlement or this Court forces them to do so. They should not, however, be allowed to use their feigned need to depose the *White/Hernandez* plaintiffs'

---

[5] Despite their agreement to make their deponents promptly available, the *Acosta/Pike* parties, insisted that if the *White/Hernandez* plaintiffs wanted to depose their sole expert, Prof. Ronald Mann, they would have to do so at his offices in Austin, Texas and would have to do so over a two-day period for three and one half hours at a time.

declarants to further delay justice in this matter or to get out from under the obligations of the *Stipulated* Order that binds them.

In a further effort to avoid their obligations under the Stipulated Order, the *Acosta/Pike* parties complain (at 8) that the *White/Hernandez* plaintiffs "sandbagged" them during the negotiations of the schedule, by not "even suggest[ing] that they would have any more than one expert opine in support of their opposition, nor did they discuss any alleged 'study' . . . that they would submit with their challenge to preliminary approval." That is ridiculous. The *White/Hernandez* plaintiffs made no representations at all about the number of experts they would offer in support of their Opposition because they had no obligation to do so and, frankly, did not know themselves how many they would be using at the time of the negotiations. However, given that this dispute involves the intersection of at least three separate disciplines (credit reporting, credit scoring and bankruptcy) and the *Acosta/Pike* parties' knowledge that the *White/Hernandez* plaintiffs were challenging the integrity of the process leading to its purported resolution, the *Acosta/Pike* parties had absolutely no basis for assuming that the *White/Hernandez* plaintiffs would only be producing a single expert witness in support of their Opposition. Needless to say, the *White/Hernandez* plaintiffs are not responsible for the *Acosta/Pike* parties' mistaken assumptions.

In a similar vein, the *Acosta/Pike* parties' complaint that the *White/Hernandez* plaintiffs did not tell them what evidence they would be submitting with their challenge to preliminary approval is even less well founded—if that is possible. Neither side informed the other of the evidence they would be presenting for or against preliminary approval because they had no obligation to do so.

Moreover, Trans Union and Equifax have known about the *White/Hernandez* plaintiffs' credit report databases since the filing of the *White* complaint, which contained allegations highlighting them, more than one year ago—allegations that

were also highlighted in this Court's ruling denying Trans Union's motion to dismiss. Yet, despite that knowledge, defendants have resisted all efforts to initiate the discovery process in the *White/Hernandez* cases that would have given them access to the back-up documentation out of which those databases were created. Likewise, defendants failed to negotiate for a provision in the Stipulated Order that would have given them a right to seek that documentation (or any other evidence that the *White/Hernandez* plaintiffs may have chosen to submit) in connection with their present motions. Nonetheless, having nothing to hide, the *White/Hernandez* plaintiffs have offered to give defendants all the information they need to double check the statistical data contained in their Opposition, including the dates of the error ridden credit reports and the names of the individuals about whom they relate. That offer was made prior to the filing of the present application—a fact that the *Acosta/Pike* parties conveniently fail to mention.

## CONCLUSION

For the aforementioned reasons, the *Acosta/Pike* parties' *ex parte* application should be denied in its entirety.

Dated: December 26, 2006   Respectfully submitted,

By: ___Michael W. Sobol/pkm___
Michael W. Sobol
(msobol@lchb.com)
Paul A. Moore
(pmoore@lchb.com)
LIEFF, CABRASER, HEIMANN
& BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000

Daniel Wolf
(dan@danielwolflaw.com)
LAW OFFICE OF DANIEL WOLF
1220 N Street, N.W., Suite PH 2
Washington, D.C. 20005
Telephone: (202) 842-2170

| | |
|---|---|
| 1 | |
| 2 | Charles W. Juntikka (cj4689)<br>(charles@cjalaw.com)<br>CHARLES JUNTIKKA & ASSOCIATES<br>11 W. 42nd Street, 12th Floor<br>New York, NY 10036<br>Telephone: (212) 315-3755 |
| 3 | |
| 4 | |
| 5 | Stuart Rossman<br>(srossman@nclc.org)<br>Charles Delbaum<br>(cdelbaum@nclc.org)<br>NATIONAL CONSUMER LAW CENTER<br>77 Summer Street, 10th Floor<br>Boston, MA 02110<br>Telephone: (617) 542-8010<br>Facsimile: (617) 542-8028 |

Charles W. Juntikka (cj4689)
(charles@cjalaw.com)
CHARLES JUNTIKKA & ASSOCIATES
11 W. 42nd Street, 12th Floor
New York, NY 10036
Telephone: (212) 315-3755

Stuart Rossman
(srossman@nclc.org)
Charles Delbaum
(cdelbaum@nclc.org)
NATIONAL CONSUMER LAW CENTER
77 Summer Street, 10th Floor
Boston, MA 02110
Telephone: (617) 542-8010
Facsimile: (617) 542-8028

Michael A. Caddell (admitted *pro hac vice*)
(mac@caddellchapman.com)
Cynthia B. Chapman (State Bar No. 164471)
(cbc@caddellchapman.com)
George Y. Niño (State Bar No. 146623)
(gyn@caddellchapman.com)
CADDELL & CHAPMAN
1331 Lamar, Suite 1070
Houston, TX 77010
Telephone: (713) 751-0400
Facsimile: (713) 751-0906

Leonard A. Bennett (VSB No. 37523)
(lenbennett@cavtel.net)
Matthew Erausquin (VSB No. 65434)
(matt@clalegal.com)
CONSUMER LITIGATION
 ASSOCIATES, P.C.
12515 Warwick Boulevard, Suite 201
Newport News, Virginia 23606
Telephone: (757) 930 3660
Facsimile: (757) 930-3662

Mitchell A. Toups (TSB No. 20151600)
(matoups@wgttlaw.com)
WELLER, GREEN, TOUPS
& TERRELL, L.L.P.
Bank of America Tower
2615 Calder St., Suite 400
Beaumont Texas 77702
Telephone: (409) 838-0101
Facsimile: (409) 832-8577